## FULTON BUILDING AND LOAN ASSOCIATION *v.* GREENLEA *et al.*

1. Where one purchases property subject to an incumbrance, and desires to pay to his vendor the difference between the purchase-price and the amount of the incumbrance, and applies to the holder of the incumbrance for information as to the amount then due him, and such holder, with a full knowledge of the purpose for which such information is asked, states an amount which he declares to be all that is then due him, and the purchaser, acting upon the faith of this statement, has a settlement with his vendor and reserves the amount which the holder of the incumbrance declared to be due him, such holder is estopped from claiming, as against the property or the purchaser, any larger sum than that reserved by the purchaser at the time of the settlement with his vendor.

2. It follows from the principle above stated, that if the holder of the incumbrance be a corporation, and the information as to the amount of the debt due be furnished by an officer who at the time of giving the information is acting within the sphere of his appropriate duties, the corporation would be estopped, as against the person who acted on such information, from claiming any larger amount than the sum fixed by the officer in his statement.

3. The charges complained of were not erroneous for any reason assigned; the evidence authorized the verdict, and there was no error in overruling the motion for a new trial.

Argued December 15, 1897. — Decided January 22, 1898.

Complaint on bond.    Before Judge Reid.    City court of Atlanta.    March term, 1897.

*Simmons & Corrigan* and *King & Anderson*, for plaintiff.
*Glenn & Rountree*, for defendants.

COBB, J.    Bass obtained a loan from a building and loan association, and to secure its payment he conveyed to the association a city lot.` This loan was to be paid in weekly instalments in the manner prescribed by the rules of the association. The association delivered to him a bond to reconvey the lot when he should pay the debt according to his contract.   He sold the lot to Murphey, transferring to him the bond for reconveyance, Murphey undertaking to pay the amount due the association. Murphey sold the lot to Mrs. Greenlea, receiving a part of the purchase-money in cash and taking her notes for the balance, the notes stipulating that when paid, the amount, or so much as was necessary, should go in liquidation of the indebtedness

of Bass to the association. Subsequently Mrs. Greenlea agreed with Murphey that she would assume the indebtedness to the association and pay him the balance of the purchase-money represented by the notes. An amount agreed upon between them as sufficient to satisfy the debt due the association was reserved by Mrs. Greenlea; and the balance due on the notes, less a discount allowed by Murphey, was paid to him, and the notes surrendered to Mrs. Greenlea. Mrs. Greenlea made payments from time to time to the association, but their aggregate amount did not equal the sum reserved by her in the settlement with Murphey. The association brought suit against Bass and Mrs. Greenlea, alleging in substance the facts above stated, and further alleging that, while the association had not accepted Mrs. Greenlea as a member, she, by her conduct in paying instalments, interest and fines, had become a member of the association, and was therefore liable to pay the indebtedness of Bass to the association in accordance with its constitution and by-laws; and praying for a judgment against Bass for the amount then due, according to the rules of the association, on the debt; and also for a like judgment against Mrs. Greenlea, and for a special judgment against the lot in her possession. To this action Mrs. Greenlea pleaded that, at the time of the settlement with Murphey, it became necessary to determine what was the amount due the association by Bass, and to ascertain this amount application was made to the secretary of the association, who was the officer in charge of its books and papers, and who was authorized to collect and settle with members and others indebted to the association, and information was given by the secretary that the amount due was a stated sum, that that sum could be paid in weekly instalments, or in larger amounts, if desired, and that the sum stated was the amount which would be necessary to discharge the indebtedness of Bass to the association; that the secretary well knew the purpose for which this information was asked; that upon the faith of this statement she reserved in her settlement with Murphey the amount stated by the secretary, and no more; that it was in her power at that time to have reserved an amount sufficient to have paid the amount claimed in the suit

as due by Bass, and her failure to reserve an amount larger than that actually reserved was due to the information furnished by the secretary when application was made to him in regard to the matter.   Upon the trial the evidence was conflicting as to what took place between the secretary of the association and the husband of Mrs. Greenlea, who was representing her at the time the arrangement was made in regard to the amount due the association.   The evidence in behalf of Mrs. Greenlea tended to establish the truth of her plea; and the evidence in behalf of the association tended to establish that the information given by the secretary was simply as to what amount paid in cash on the day that the information was given would discharge Bass from indebtedness to the association, and that payment in cash on that day, according to the rules of the association, was absolutely essential to make the sum stated the amount of the indebtedness of Bass; and a failure to pay on that day would render Bass liable to instalments, interest, fines, etc., according to the rules of the association; and the sum sued for represented the amount reached by a calculation according to such rules.   The jury returned a verdict in favor of the defendant on this issue, finding for the plaintiff the amount admitted by Mrs. Greenlea to be due.   The plaintiff's motion for a new trial being overruled, it excepted.   The motion contained, besides the general grounds, complaints that the verdict was contrary to specified charges of the court, and assignments of error upon the refusal of the court to strike certain pleas of the defendant setting up the defense above outlined, and in admitting certain evidence offered in support of the same.

Mrs. Greenlea's relations to the association must be fixed and determined by what took place between her husband and the secretary at the time the application in her behalf was made for information in regard to the amount that was necessary to be paid by her in order to discharge the property purchased from Bass from the claim of the association.   It does not appear that the stock owned by Bass in the association was ever transferred to Murphey or to Mrs. Greenlea.   The suit brought by the association is against Bass as a shareholder.   As long as Bass remained a member of the association it would be impos-

sible for Mrs. Greenlea to become a member in his stead. The suit against Bass shows that at the time the petition was filed the association treated him as a member. If Mrs. Greenlea had become a member of the association and stood in Bass's shoes, then suit could not be brought against Bass. That she did not become a member is evident from the character of the suit brought. Not having become a member, and her only relation to the association being that which was brought about by the transaction between her husband and the secretary, above referred to, the only right of the association to proceed against her as a debtor to it must be derived therefrom. The association, having to look to that transaction for the purpose of fixing her liability to it, can not be allowed to disregard a part of that transaction and fix the amount of her liability at a different sum than the transaction itself would authorize. If she were a member, the presumption might be that she knew that the statement by the secretary was incorrect. Not being a member, and being ignorant as to the method pursued by the association in fixing the amount to be paid by its members on loans, the association, in dealing with her through its secretary, would be bound by the statements made by the secretary, in so far as such statements were in the sphere of his appropriate duties. Civil Code, § 1861. To determine whether a statement by the secretary as to the amount due by Bass would be so far within the sphere of his appropriate duties as to bind the corporation, and be the foundation of an estoppel if she acted upon it, it is necessary to examine the evidence in the case. From the record it appears that the duties of the secretary were prescribed by a rule of the company, which is as follows: "The secretary shall keep correct minutes of all meetings of the association and of the board of directors. His book of minutes shall be present at all meetings of the association, and may be inspected by any member. He shall keep an accurate account with each member of the association, and be prepared at all times to give members information concerning their accounts. He shall attest all orders drawn on the treasurer, ordered by the board of directors or finance committee, and signed by the president. He shall receive all moneys for dues on stock, in-

terest, transfers, or bonuses, or any other payments, and pay the same over to the treasurer weekly, taking his receipt therefor.   He shall issue all notices, and conduct all the necessary correspondence for the association, under the direction of the board of directors.   He shall have in charge all the books and papers of the association, and its common seal, and deliver the same over to his successor in office.   He shall furnish at every annual meeting, and oftener if required by the board of directors, a particular statement of the accounts and finances of the association, and shall perform such other duties as the board may direct.   He shall receive as compensation for his services forty dollars per year for each one hundred shares of stock, which allowance shall be made at the beginning of each year; and he shall give satisfactory security for the faithful performance of his respective duties."

There was also testimony of the secretary at the time of the transaction with Mrs. Greenlea, and his successor in office, showing the manner in which the duties of the office were discharged, as well as what was the custom of the secretary as to dealings and transactions with members and others.   Doonan, the secretary at the time of the transaction with Mrs. Greenlea, testified as follows: " When I was secretary of the company I had charge of all that belonged to the company, the mortgages, the transfers of mortgages, and all other papers of value.   When a man would come in and make payment, I would receive the money and give him receipt.   We had no mortgages, but deeds. We had but one transaction, and that was the pass-book transaction.   This was all the association had with anybody upon the payment of weekly dues.   We had deeds for loans; I turned them over to my successor.   As secretary of the association I kept the deeds.   Money that was paid was credited upon the pass-book as dues, and when he was a borrower it was also credited.   I was custodian of the securities.   When a man came in and made payment, whether it was payment of dues, or whether he paid a deed off, I received the money.   If it was in full, I turned the papers over to him.   I made the calculation how much was due.   That was my duty.   I calculated the amount of the debt, and if he paid me for it, I had authority to turn over to him the deed.   I have done it a number of times."

Meador, the successor of Doonan, testified as follows: "I am secretary of the company and have been since 1894. I have had charge of all the papers and securities of the company. I make the settlements generally. If a man owes so many dollars dues, and he comes and pays, I give him a receipt or put it on the pass-book. If he owes $1,000 and I have got it secured by a mortgage on the house and lot, and I transfer the mortgage to any other party, I give him a receipt if he pays it. The company knows I do that. That is a part of my duty. I have a rule to settle by, and only one way of settling. Of course I make the settlement. If a man pays up in full for a debt secured by a transfer of the stock and by a mortgage on real estate, I cancel the mortgage. I don't know whether the president signs the cancellation of the mortgages or not. I think he may. Well, as to whatever has been done, I don't know; whether the president has been signing them I don't know. When we have a settlement of mortgages it is usually done by the attorney. Since I have had charge of the association we have been in suit and in a state of liquidation, and all settlements that have been made of mortgages have been done through our attorneys. In a plain proposition of course I make settlements; but when it comes to cancelling mortgages I don't know whether I sign them or not. I give receipts in full of all claims when they pay me. Whether it covers dues, or whether it covers deeds (?) secured by mortgage, I give a receipt when they pay. I sign the name of the company to it."

It being clear from this testimony that it was the duty of the secretary to collect all amounts due by members of the association, and when a member discharged his entire indebtedness to the association, to receipt him in full and deliver up the security which the association held, it was within the sphere of the appropriate duties of this officer to receive and collect from a stranger the amount that might be due it by a member, when the member so requested it, and the person paying had become the purchaser of the property which the association held as security for the debt. This being the case, a statement made by the secretary as to the amount due by such member, as a basis of settlement between the association and the pur-

chaser of the property which was held by the association, was clearly within the sphere of the appropriate duties of this officer. According to the testimony introduced by the defendant, the secretary of the association, in the transaction with Mrs. Greenlea's husband, fixed an amount which would represent the entire sum due by Bass to the association, and furnished this information with the full knowledge of the fact that Mrs. Greenlea intended to act upon it and make a settlement with Murphey. This being, according to the verdict of the jury, the truth of the case, it would be inequitable and unjust to require her to pay more than the amount which the secretary had fixed, with lawful interest from the date that he made the statement.   On the day that this statement was made she was in a position to have amply protected herself if it had been explained to her that, according to the rules of the association, the amount due by Bass was shifting from day to day, and that no definite sum could be fixed as a basis of settlement for a future day.   With this information she could have protected herself by reserving an amount from Murphey which would have been, in any event, sufficient to discharge the indebtedness of Bass to the association; or she could have declined to pay Murphey at all until the indebtedness to the association was paid off by him. On this, the controlling issue in the case, as stated above, the evidence was conflicting.   The jury have decided this issue in favor of Mrs. Greenlea; the presiding judge has seen proper to decline to interfere; and as we find no error in the record which would require us to reverse his judgment in overruling the motion for a new trial, the judgment must be

*Affirmed.   All the Justices concurring, except Lewis J., disqualified.*