43887. McGLAUN et al. v. SOUTHWEST GEORGIA
PRODUCTION CREDIT ASSOCIATION.
43888. McGLAUN v. SOUTHWEST GEORGIA PRODUCTION
CREDIT ASSOCIATION.
(352 SE2d 558)

GREGORY, Justice.

Larry McGlaun, Nola McGlaun and the estate of Stewart McGlaun are owners of a tract of farmland in Webster County which they operate as McGlaun Farms, Inc. (McGlaun Farms). On January 10, 1978, McGlaun Farms borrowed $188,000 from appellee Southwest Georgia Production Credit Association (PCA) for operating expenses, and executed a promissory note to the PCA in that amount. On that same date Stewart McGlaun,[1] Larry McGlaun and Nola McGlaun executed a continuing guaranty agreement personally guaranteeing the repayment of this corporate indebtedness and "all renewals and extensions thereof." Simultaneously the McGlauns executed a deed to secure debt to the PCA on the family farmland. On June 26, 1978 McGlaun Farms borrowed an additional $75,000. On October 26, 1978, Larry McGlaun went to the PCA to pay off the indebtedness of McGlaun Farms. McGlaun testified the loan officer advised him that McGlaun Farms owed $92,004.30. Larry McGlaun wrote a check for this amount, then requested a breakdown of the amounts of principal and interest owed. He was advised that $86,150 was owed as principal and $5,855.30 was owed as interest. Larry McGlaun denominated these figures on the face of the check but did not add them together to determine the correctness of the amount of indebtedness indicated by the PCA. Addition of these figures showed that $92,005.30 was

---

[1] Stewart McGlaun died while this litigation was pending.

owed. The PCA subsequently cashed and retained the funds from McGlaun's check. The promissory note of January 10, 1978 was stamped paid, but the deed to secure debt was never cancelled. Shortly thereafter Stewart McGlaun went to the office of the President of the PCA to determine whether the debt had been paid. He testified that the President of the PCA assured him the debt had been paid in full. The testimony of the PCA President is that he told Stewart McGlaun "the principal and interest had been paid," but that he cannot remember whether he informed him that "$1.00 remained outstanding on the debt" of McGlaun Farms to "keep the security papers open."

In January 1979, McGlaun Farms again borrowed $188,000 from the PCA for operating expenses. The PCA required the McGlauns to execute another "continuing guaranty," but Stewart McGlaun refused; the guaranty was thereafter executed by Larry and Nola McGlaun. The record does not indicate that a deed to secure debt was executed. Again in 1980 McGlaun Farms borrowed money for operating expenses from the PCA. Larry and Nola McGlaun again executed a guaranty for this debt, but the record does not show that a deed to secure debt was executed.

Maintaining that sums due under several promissory notes executed in 1980 by McGlaun Farms had not been paid, the PCA initiated foreclosure proceedings under the provisions of the January 10, 1978 deed to secure debt. The McGlauns filed a petition for injunctive relief, and both parties moved for summary judgment on the merits of the case. Following a hearing the trial court granted the PCA's motion for summary judgment and denied the motion of the McGlauns. For reasons which follow, we affirm in part and reverse in part.

1. The McGlauns allege that the 1978 deed to secure debt is void *ab initio* because they signed it in blank.[2] Assuming without deciding that a deed to secure debt signed in blank is void, see *Boyd Lumber Co. v. Mills*, 146 Ga. 794 (92 SE 534) (1917) and *Parnell v. Wooten*, 202 Ga. 443 (43 SE2d 673) (1947), the parties in this case may not rely on this rule. It is not disputed that in January 1978 McGlaun Farms borrowed $188,000 which was secured by this deed to secure debt, and again in June 1978 borrowed $75,000 secured by this deed to secure debt. It is also undisputed that the McGlauns were aware at the time they signed the deed to secure debt of the facts which they now contend render it void. Under Georgia law the McGlauns "are estopped, as a matter of law, to assert a defense to which they had knowledge when they signed a . . . note for [McGlaun Farms in June

---

[2] The PCA maintains the deed to secure debt was not signed in blank.

1978]." *C & S Nat. Bank v. Yeager Enterprises*, 247 Ga. 797, 798 (279 SE2d 674) (1981) (Undercofler, Smith and Gregory, JJ., dissenting). The trial court did not err in granting summary judgment to the PCA on this issue.

2. The McGlauns argue that there is an issue of fact as to whether the indebtedness for 1978 was satisfied such that the "open end clause" in the deed to secure debt is no longer valid. We agree.

The PCA takes the position that the parties' intent was to leave one dollar owing on the indebtedness so that the security documents would not have to be cancelled, thereby enabling the McGlauns to borrow additional sums without executing further security documents. The McGlauns maintain that it was the parties' intent to fully satisfy the 1978 indebtedness by payment of the October 26 check. We conclude there is an issue as to the intent of the parties which must be decided by the trior of fact.

"When a creditor receives and retains a sum of money from his debtor less than the amount actually due him *with the understanding, either express or implied,* that it is received by him in satisfaction of his claim or demand, he cannot thereafter treat it as a nullity and recover the balance. . . ." (Emphasis supplied.) *Rivers v. Cole Corp.,* 209 Ga. 406 (73 SE2d 196) (1952); *Gulf States Constr. v. Superior Rigging,* 125 Ga. App. 187 (186 SE2d 588) (1971). See also OCGA § 13-4-103. A deed to secure debt with an open end or dragnet clause will continue to be effective only so long as there exists indebtedness between the grantor and grantee. *C & S DeKalb Bank v. Hicks,* 232 Ga. 244, 246 (206 SE2d 22) (1974). Therefore a determination by the factfinder that the parties intended for the October 26, 1978 check to satisfy the indebtedness would mean that the deed to secure debt and the guaranty executed in 1978 were rendered ineffective at that time. See *Frank & Co. v. Nathan,* 159 Ga. 202 (125 SE 66) (1924).

3. The McGlauns argue that while attorney fees are specifically authorized by the 1978 corporate note, they are not so authorized by the guaranty executed in 1978, and thus the McGlauns may not be held liable for attorney fees in their individual capacities as guarantors. However, we interpret the promise in the guaranty of "prompt payment, at maturity, of any and all notes evidencing such advances, all renewals and extensions thereof, and all other indebtedness that is now, or hereafter may be or become owing by Borrower to Lender," to include a promise to pay any attorney fees which become due under the terms of the corporate note. An intention to limit the guaranty to payment of principal and interest only could easily have been expressed if desired.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

## On Motion for Reconsideration.

The McGlauns on Motion for Reconsideration have asked us to determine the amount of the indebtedness.

The trial court found there was no genuine issue of fact as to the amount of the debt. We disagree. The appellants contend they have not been given credit for the value of stock in the PCA which they are entitled to have credited against the debt. The PCA contends credit for the stock has been given. There is some evidence in the record supporting both positions, creating an issue for determination by the factfinder.

There also remains to be determined, as a matter of fact and law below, how much of any debt is covered under the terms of the continuing guaranties. Appellants contend only loans for operating expenses are guaranteed by these instruments, and that some of the debt claimed to be due arose out of loans for purposes other than operating expenses. These issues remain for resolution legally and factually in the trial court.

The PCA contends there is an estoppel arising out of McGlaun Farms' payment of the one dollar in question in 1979 as shown by the PCA records. This issue was not raised below and we decline to reach it on this appeal.

The PCA also points out that no right to trial by jury exists in an equity case, and therefore the trial court has already resolved and disposed of questions of fact in this case. Whether a jury participates in this case or not, the rules for summary judgment are the same: issues of fact cannot be resolved on summary judgment, but must be determined by the factfinder whether jury or judge.

DECIDED JANUARY 7, 1987 —
RECONSIDERATION DENIED FEBRUARY 12, 1987.

*Butler & McDonald, James E. Butler, Jr.,* for appellants (case no. 43887).

*Fennessy, Skipper, Nettum & Sheffield, James E. Skipper,* for appellant (case no. 43888).

*Smith, Jones & Jones, William E. Smith,* for appellee.