75529. EDENFIELD v. TRUST COMPANY MORTGAGE.
(365 SE2d 520)

McMURRAY, Presiding Judge.

Plaintiff Edenfield brought this suit against Trust Company Mortgage seeking liquidated damages and reasonable attorney fees pursuant to OCGA § 44-14-3 (c). It was alleged that plaintiff gave

defendant a promissory note and a deed to secure debt on March 25, 1985; that plaintiff satisfied the indebtedness in full and made a written demand for cancellation of the security deed; that defendant refused to cancel the security deed within 45 days of plaintiff's written demand; and that defendant's refusal to cancel the security deed was in bad faith. Defendant answered the complaint and denied that plaintiff satisfied the indebtedness in full. Five days later, defendant sought leave to set up an omitted counterclaim by amendment. The trial court determined that justice required the granting of leave and, thereafter, defendant asserted a counterclaim alleging that plaintiff was indebted to it in the amount of $689.40. Thereafter, each side moved for summary judgment.

In an affidavit, plaintiff deposed that he "mailed a payoff check in the amount of $50,445.47 for the satisfaction of a loan made by TRUST COMPANY MORTGAGE . . . along with a letter of notice indicating that the Security Deed . . . must be cancelled within 45 days of the receipt of the enclosed check." He deposed further that the check constituted full payment of the loan; that the security deed was not cancelled within 45 days; and that an officer of Trust Company Mortgage admitted that "the loan had been paid off in full, but he indicated that the Security Deed would not be cancelled until [plaintiff] returned $689.40 of the escrow amount that was forwarded to [plaintiff]."

F. Dan Watson, Group Vice President of Trust Company Mortgage executed two affidavits on defendant's behalf. Therein, he deposed that plaintiff requested a payoff figure for a loan which defendant made to him; that on May 16, 1986, plaintiff was given a payoff figure of $50,250.22 as of May 23, 1986; that although the loan was not paid off on May 23, 1986, a $50,445.47 payment was made on June 5, 1986; that in the meantime plaintiff's June 1, 1986, payment of $689.40 was seemingly made by automatic bank draft and credited against plaintiff's indebtedness; that plaintiff's "apparent overpayment of $527.95 [was] credited to escrow"; and that on June 9, 1986, a check in the amount of $815.11 was issued to plaintiff to refund the apparent overpayment plus plaintiff's accumulated escrow. Watson deposed further that payment was stopped on the automatic draft payment and the draft was dishonored subsequently by plaintiff's bank; that the dishonoring of the draft resulted in the underpayment of the loan; that that is why defendant delayed cancellation of the security deed; that the security deed was marked "satisfied" and mailed to plaintiff's attorney on September 29, 1986; that plaintiff remains indebted to defendant in the amount of $689.40; and that plaintiff refused to pay this amount in spite of defendant's demands that he do so.

The trial court denied plaintiff's motion for summary judgment.

It granted summary judgment to defendant, however, with regard to plaintiff's claim and defendant's counterclaim. Plaintiff appeals, enumerating error upon the grant of summary judgment to defendant with regard to the main claim, the denial of plaintiff's motion for summary judgment with regard to the main claim, and the grant of leave to set up the omitted counterclaim by amendment. Plaintiff did not assign error with regard to the grant of summary judgment to defendant upon its counterclaim. *Held*:

1. Prior to its amendment on July 1, 1986, OCGA § 44-14-3 (b) provided that "[w]henever the indebtedness secured by any instrument is paid in full, the grantee of the instrument, within 45 days of the date of the full payment, shall cause to be furnished to the grantor or to the clerk of the superior court of the county or counties in which the instrument is recorded a legally sufficient satisfaction or cancellation to authorize and direct the clerk or clerks to cancel the instrument of record."[1] Subsection (c) of OCGA § 44-14-3 penalizes grantees for their failure to comply with the cancellation provision. It provides, in part, that "Upon the failure of the grantee to transmit properly a legally sufficient satisfaction or cancellation as provided in this Code section, the grantee shall be liable to the grantor for the sum of $200.00 as liquidated damages and, in addition thereto, for such additional sums for any loss caused to the grantor plus reasonable attorney fees."

"The plain legislative purpose underlying OCGA § 44-14-3 (c) is to protect grantors from victimization by grantees who unreasonably withhold satisfaction or cancellation. To accomplish this purpose, the statute compensates the victimized grantor, punishes the grantee who has perpetrated the abuse, and attempts to deter future abuses. See Jones on Mortgages, Vol. 2, § 1269 (1928). It is just as clear, however, that the General Assembly did not intend to force a grantee to refuse to satisfy or cancel at his peril, if his refusal is not wanton or oppressive, but is the result of an honest doubt. In instances where there is a bona fide controversy, and the grantee has a good faith belief that the debt has not been paid in full, imposition of the statutory penalties clearly would not serve the statutory purpose of punishing grantees who have unreasonably withheld cancellation, and in fact would hinder the object of deterrence by arbitrarily and capriciously imposing penalties where none are merited . . . [Thus] where there are honest, disputed, or doubtful questions, a grantee is not liable for the refusal to satisfy an instrument if his refusal is made in good faith and under the honest belief that the debt has not been paid. The grantee of the

---

[1] OCGA § 44-14-3 (b) was amended effective July 1, 1986. Via the amendment, the language "to the grantor" was eliminated from the first sentence of the subsection. The amendment has no bearing upon this action.

instrument will not be excused, however, where his refusal to satisfy results from mere inadvertence, indifference, inattention, or wantonness." *Mitchell v. Oliver*, 254 Ga. 112, 116 (327 SE2d 216).

In the case sub judice, defendant submitted facts demonstrating that it did not cancel the security deed within the 45-day time period because of an "honest doubt" concerning payment of the debt. Thus, defendant demonstrated that its refusal to cancel the security deed in timely fashion was made in good faith. Plaintiff presented no specific facts raising a genuine issue in this regard. Accordingly, the trial court properly granted defendant's motion for summary judgment upon plaintiff's claim for statutory penalties under OCGA § 44-14-3 (c). See *Georgia Farm &c. Ins. Co. v. Matthews*, 149 Ga. App. 350, 351 (2) (254 SE2d 413). It follows that the denial of plaintiff's motion for summary judgment was not error.

2. Plaintiff contends the trial court erred in granting defendant's motion for leave to set up an omitted counterclaim. We disagree.

OCGA § 9-11-13 (f) provides that when a counterclaim is omitted it can be set up with leave of court by amendment under certain circumstances, to wit: when the counterclaim was omitted "through oversight, inadvertence, or excusable neglect, or when justice requires." The phrase "when justice requires" provides an independent ground for granting leave to set up an omitted counterclaim. Thus, a trial court "should allow the amendment 'when justice requires,' even though the other three requirements may not be met." *Kitchens v. Lowe*, 139 Ga. App. 526, 529 (228 SE2d 923). In the case sub judice, we cannot say the trial court abused its discretion by granting leave to set up the omitted counterclaim in the interest of justice. See *Clairmont Foods v. Huddle House*, 142 Ga. App. 171 (1) (235 SE2d 635) (in construing CPA § 13 (f) (OCGA § 9-11-13 (f)), the "trial judge is vested with discretion which will not be controlled absent a legal abuse"). Plaintiff has not demonstrated prejudice resulting from the filing of the counterclaim. (The motion seeking leave to file the counterclaim was made a mere five days after defendant filed its answer. Moreover, plaintiff does not deny that he is indebted to defendant for the amount sought pursuant to the counterclaim.) In the absence of a showing of prejudice, the trial court cannot be said to have erred in allowing the counterclaim to be set up by amendment. *Williams v. Buckley*, 148 Ga. App. 778, 779 (252 SE2d 692); *Kitchens v. Lowe*, 139 Ga. App. 526, 529, supra.

*Judgment affirmed. Sognier and Beasley, JJ., concur.*

DECIDED JANUARY 29, 1988.

*William G. Maston*, for appellant.

*William F. Hinesley III*, for appellee.