**In re Alberta GOLDBERG, Debtor.**

**Regions Bank, f/k/a Allied Bank of Georgia, Plaintiff,**

v.

**Wachovia Bank, NA, f/k/a Wachovia Bank of Georgia, NA, and A. Stephenson Wallace as Trustee for the Estate of Alberta Goldberg, Defendants.**

**Bankruptcy No. 98–12769.**
**Adversary No. 99–01007A.**

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

March 3, 2000.

Mark L. Wilhelmi, Attorney at Law, Augusta, GA, for plaintiff.

J. Randall Hall, Attorney at Law, Augusta, GA, for defendant.

## ORDER

JOHN S. DALIS, Chief Judge.

Plaintiff Regions Bank ("Regions Bank"), brings suit against defendant Wachovia Bank of Georgia, N.A. ("Wachovia Bank")[1], to determine the validity, priority or extent of a lien on real property located at 2501 Henry Street, Augusta, Richmond County, Georgia ("Property"). Defendant A. Stephenson Wallace, the Trustee for the bankruptcy estate of Alberta Goldberg, did not contest the claims of Regions Bank.[2]

---

1. Wachovia Bank of Georgia, NA, was the name of this entity in 1995, and presumably previous to that date. Its current name is Wachovia Bank, NA. In this Order, "Wachovia Bank" identifies both as the same or successor entities.

2. Defendant A. Stephenson Wallace, Chapter 7 Trustee for the bankruptcy estate of Alberta Goldberg, answered the complaint with responsive pleadings filed March 10, 1999. The paragraphs of the complaint were listed as either "admits" or "is without sufficient information to form a belief as to the truth of the allegations." Although there was no response to paragraph 16, that paragraph is an uncontested fact ("16. That Wachovia did not cancel said deed to secure debt."). The Trustee prayed, "that this Court enter an order finding that Wachovia Bank of Georgia is an unsecured creditor in the Alberta Goldberg bankruptcy, and for such other and further

The Property, part of the bankruptcy estate of debtor Alberta Goldberg ("Debtor"), was used by Debtor to secure a loan from Wachovia Bank in 1992 and again to secure a loan from Regions Bank in 1995. Part of the 1995 loan proceeds from Regions Bank was paid directly to Wachovia Bank. Regions Bank claims that this amount satisfied all of Debtor's obligations to Wachovia Bank that were secured by the Property, that Wachovia Bank should have canceled their lien on the Property, and that Regions Bank is the lawful first priority lienholder. Regions Bank further seeks damages pursuant to O.C.G.A. § 44–14–3(c). Wachovia Bank counters that the monies paid by Regions Bank did not fully satisfy all outstanding loans secured by the Property, and therefore Wachovia Bank rightfully retains the first priority lien. Regions Bank is the rightful holder of the first priority lien on the Property. The penalties of O.C.G.A. § 44–14–3(c) are appropriately imposed against Wachovia Bank.

The facts of this case are as follows. On December 31, 1992, Wachovia Bank lent $315,000.00 to Goldberg Brothers, Inc. ("GBI"). The Debtor signed several documents on behalf of GBI at that time, including a Guaranty Agreement, an Addendum to the Guaranty Agreement and a Deed to Secure Debt Securing Guaranty. Each had a dragnet clause, which extended the scope of her obligation to cover not just the $315,000.000 note, but all of GBI's past and future indebtedness to Wachovia Bank. In the Guaranty Agreement, Debtor guaranteed all of GBI's debt, then existing or later incurred, to Wachovia Bank and to Wachovia Bank's affiliates.

NOW, THEREFORE, in consideration of such credit extended ... the undersigned hereby unconditionally guarantees to the Bank and any of "Bank's Affiliates" ... the punctual payment when due, whether by acceleration or otherwise, and at all times thereafter of (a) all debts, liabilities and obligations whatsoever of the Borrower to the Lender, now existing or hereafter coming into existence, ... As used herein, "Banks Affiliates" means any entity or entities now or hereafter directly or indirectly controlled by Wachovia Corporation or any successor thereto.

The Addendum to the Guaranty Agreement established that Debtor pledged a security interest in the Property to secure all debt included in the Guaranty Agreement, i.e. all current and future debt of GBI to Wachovia Bank.

To secure the liabilities of the Guarantor(s) to the Bank under the Guaranty Agreement, together with any other indebtedness, liabilities and obligations of Guarantor(s), or any of them, to the bank, now existing or hereafter incurred or arising, the Guarantor(s) each hereby grant to the Bank a security interest in and security title to the following described property:

2501 Henry Street, Richmond County, Augusta, Georgia.

Each Guarantor agrees that the security interest and security title granted hereby shall remain in full force and effect and shall not be released by the Bank until all Obligations of the Borrower and all indebtedness, liabilities and obligations of the Guarantor(s) secured hereby have been indefeasibly paid in full and such payments are no longer subject to rescission, recovery or repayment upon the bankruptcy, insolvency, reorganization, moratorium, receivership or similar proceeding affecting the Borrower, the Guarantor(s) or any other person.

The Deed to Secure Debt Securing Guaranty ("Security Deed") was filed in the Office of the Clerk of Richmond County Superior Court on January 5, 1993. It conveyed title to the Property to Wachovia

relief as is just and proper under the circumstances." He was not present at the scheduling conference on March 25, 1999, or the trial

on May 10, 1999. The Trustee thereby abandoned his interest in the property at issue.

Bank until all indebtedness that Debtor guaranteed in the Guaranty Agreement had been paid in full.

This conveyance is made under the provision of The Official Code of Georgia Annotated, Title 44, Chapter 14, Article 3 and upon payment of the debt hereby secured this deed shall be cancelled and surrendered pursuant thereto; the debt hereby secured being all indebtedness of Grantor or any of them, to Grantee arising under that certain Guaranty, dated December 31, 1992, executed by Grantor or any of them in favor of Grantee, under which, *inter alia,* Grantor or any of them has guaranteed payment of all indebtedness of Goldberg Bros., Inc. ("Debtor") to Grantee arising under that certain promissory note, dated 12/31, 1992, executed by Debtor in favor of Grantee, in the original principal amount of Three hundred fifteen thousand and 00/100 Dollars ($315,000.00), maturing 1/10/2003, together with any and all renewals or extension thereof, in whole or in part.

It is the intention of the Grantor and Grantee that this deed shall secure not only the indebtedness hereinabove described but also any and all other and further indebtedness, obligations and liabilities now owing or which may hereafter be owing, however incurred, to Grantee, by Grantor or any of the them or by the Debtor, whether jointly or severally.

By the terms of the Security Deed and Guaranty Agreement, the Property collateralized not only all of GBI's present and future debt to Wachovia Bank, but also all such debt to Wachovia Bank's affiliates. The Security Deed referenced O.C.G.A. § 44–14–3 and called for cancellation upon payment of all debt secured.[3] Payment in full of GBI's debt to Wachovia Bank and affiliates would call for cancellation of the Security Deed.

On August 23, 1995, Regions Bank[4] refinanced the loans of both GBI and Richmond Recycling, Inc. ("RRI"). Regions Bank and the Debtor, GBI and RRI intended that all debt owed by GBI and RRI to Wachovia Bank be paid in full, and the collateral previously pledged to Wachovia Bank be pledged to Regions Bank to secure the new debt. Mr. Gordon Yearwood of Regions Bank testified that without the Property as collateral, no loan would have been made. Mr. Yearwood instructed Regions Bank attorney, Mr. David Wilkin, to provide a title opinion and that Regions Bank was to receive a first priority inter-

---

**3.** Official Code of Georgia Annotated (O.C.G.A.) 44–14–3 provides in part pertinent:

Furnishing of cancellation by grantee or holder upon payment; liability for failure to comply; cancellation of instrument after failure to comply; liability of agents....

(b)(1) Whenever the indebtedness secured by any instrument is paid in full, the grantee or holder of the instrument, within 60 days of the date of the full payment, shall cause to be furnished to the clerk of the superior court of the county or counties in which the instrument is recorded a legally sufficient satisfaction or cancellation to authorize and direct the clerk or clerks to cancel the instrument of record. The grantee or holder shall further direct the clerk of the court to transmit to the grantor the original cancellation or satisfaction document at the grantor's last known address as shown on the records of the grantee or holder. In the case of a revolving loan account, the debt shall be considered to be "paid in full" only when the entire indebted-

ness including accrued finance charges has been paid and the lender or debtor has notified the other party to the agreement in writing that he wishes to terminate the agreement pursuant to its terms.

(2) Notwithstanding paragraph (1) of this subsection, if an attorney at law remits the pay-off balance of an instrument to a grantee or holder on behalf of a grantor, the grantee or holder may direct the clerk of the court to transmit to such attorney the original cancellation or satisfaction document.

(3) A grantee or holder shall be authorized to add to the pay-off amount the costs of recording a cancellation or satisfaction of an instrument.

**4.** The refinancing was actually done by Allied Bank of Georgia. Allied Bank of Georgia later became Regions Bank. Since this change in identity does not affect the issues raised in this Order, in the interest of clarity both Allied Bank of Georgia and Regions Bank are referred to as "Regions Bank."

est in the Property. Mr. Wilkin called Wachovia Bank and spoke to Mr. Paul Rightout, who was in charge of the accounts of GBI and RRI. Mr. Wilkin·requested the payoff amounts for all loans outstanding to the two corporations. Mr. Wilkin testified that he specifically requested the complete extent of debt, and emphasized that Regions Bank sought release of all liens on collateral, including the lien on the Property. Mr. Rightout did not recollect this call, and denied that either Regions Bank or its attorney gave instructions regarding specific collateral to be released.

Wachovia Bank provided Regions Bank with a list of seven loans. The list was compiled by Ms. Deborah Whatley, an administrative assistant in Wachovia Bank's business banking department whose routine job duties included providing such lists. Of the seven loans, two were in the name of Richmond Recycling, Inc., and five were in the name of Goldberg Brothers, Inc. The account number, principal owed, interest owed, and total due were given for each loan. Below the seven loans was a total, "As of August 24, 1995: $610,411.16."

The list was incomplete. At that time, GBI had a business credit card with a line of credit to $5,000.00 with an affiliate of Wachovia Bank. The credit card represented at least a potential debt of up to $5,000.00; but Wachovia Bank failed to prove that there was any balance owed on the credit card on August 23, 1995. Mr. Rightout, of Wachovia Bank, testified that Wachovia Bank would have had knowledge that the credit card account was open. The credit card was not included on the list of loans. In addition, GBI and/or RRI had deposit/checking accounts at Wachovia Bank. Wachovia Bank could have required collateral on these accounts. However, they also did not appear on the list of loans that Wachovia Bank provided. There was no evidence presented that either GBI or RRI owed Wachovia Bank any debt arising from the deposit/checking accounts on August 23, 1995.

Mr. Yearwood testified that because the list of loans was furnished by Wachovia Bank, he considered it to be a complete list of debt requiring payoff. Mr. Yearwood did not actually review the list, and did not know if anyone at Regions Bank reviewed the list with the Debtor or any officer/director of GBI or RRI for accuracy and completeness.

At the closing, Wachovia Bank was issued a check in the amount of $610,411.16, the total amount stated on the list of seven loans. The top (non-negotiable) section of the check showed the following information:

| | |
|---|---|
| Amount | $610,411.16 |
| Date | 08/23/95 |
| Payee | Wachovia |
| Seller(s) | — |
| Buyer(s) | Alberta Goldberg and Goldberg Brothers, Inc. Richmond Recycling, Inc. |
| Property Location | 2501 Henry Street Augusta,, Richmond County Georgia |

Loan Pay Off
Good Thru 8/24

The check was endorsed by Mr. Rightout and negotiated by Wachovia Bank.

At the closing, Debtor's then husband, as president of both GBI and RRI, signed notes for Regions Bank's loan to each corporation pledging a "first mortgage security deed" on the Property. Debtor signed the corresponding. security deed to Regions Bank, which was filed with the Clerk of Superior Court in Richmond County, Georgia on August 25, 1995.

Wachovia Bank's loans were secured by other collateral besides the Property: accounts receivable, inventory, and equipment. This security interest in business collateral was perfected by a UCC–1 filing. After the closing, Wachovia Bank canceled that security interest. Mr. Mitchell of Wachovia Bank testified that the UCC–1 fil-

ing was canceled "because the debt that was related to those business assets was paid." It is unknown whether this security interest was subject to a dragnet clause comparable to those of Wachovia Bank's Guaranty Agreement and Security Deed.

Wachovia Bank did not cancel its Security Deed to the Property. Mr. Wilkin did not bring down the title examination of the Property after the closing. On October 31, 1996, Mr. Wilkin faxed a request to Wachovia Bank that their Security Deed be canceled in accordance with the payoff of August 23, 1995. He was told by Ms. Whatley that Wachovia Bank was retaining the security deed to secure other debt. Wachovia Bank claims that the dragnet clauses of the Guaranty Agreement and Security Deed allowed Wachovia Bank to retain its lien on the Property to secure the credit card debt, the deposit/checking accounts, and any loans subsequent to the closing.[5]

On October 30, 1998, Alberta Goldberg filed for bankruptcy relief. Both Regions Bank and Wachovia Bank now claim to have the first priority lien on the Property. The Court has jurisdiction to hear this matter as a core bankruptcy proceeding under 28 U.S.C. § 157(b)(2)(A) and (K) and 28 U.S.C. § 1334 (1994). Since this proceeding solely concerns property rights, property law of the State of Georgia is determinative. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–918, 59 L.Ed.2d 136 (1979), *Leggett v. Morgan (In re Morgan)*, 115 B.R. 399 (Bkrtcy.M.D.Ga.1990).

The parties' contentions center on two issues. First, was Wachovia Bank required to cancel its Security Deed to the Property when Regions Bank asked it for an amount due and then paid that amount. Second, did the dragnet clause of the Guaranty Agreement, incorporated by the Security Deed, allow Wachovia Bank to retain its lien on the Property after the closing.

The first issue considered is whether Wachovia Bank was required to cancel its Security Deed upon receipt of a check in the amount that Wachovia Bank had declared was due. The Supreme Court of Georgia has considered similar situations in both the purchase of property and the repayment of debt. *McGlaun v. Southwest Georgia Production Credit Ass'n*, 256 Ga. 648, 352 S.E.2d 558 (1987), *Fairview Terrace, Inc. v. Roberts*, 215 Ga. 407, 110 S.E.2d 641 (1959), *Fulton Bldg. & Loan Ass'n v. Greenlea*, 103 Ga. 376, 29 S.E. 932 (1898). These cases hold that when a lienholder is asked for the amount needed to pay off the secured debt, and that amount is then tendered to the lienholder in payment of the debt, the lienholder is estopped from claiming a larger sum is due and must cancel the security deed.

In *McGlaun*, a borrower testified that he had fully repaid his debt in the amount stated by the lender, but the lender testified that one dollar was intentionally left owing so that the security documents would remain in effect and keep the renewable operating expenses loan open. 352 S.E.2d at 559–560. The court stated the applicable law:

> "When a creditor receives and retains a sum of money from his debtor less than the amount actually due him *with the understanding, either express or implied,* that it is received by him in satisfaction of his claim or demand, he cannot thereafter treat it as a nullity and recover the balance . . . ." (Emphasis supplied.) *Rivers v. Cole Corp.*, 209 Ga. 406, 73 S.E.2d 196 (1952); *Gulf States Construction v. Superior Rigging*, 125 Ga.App. 187, 186 S.E.2d 588 (1971). (Emphasis supplied) See also OCGA § 13-4-103.

*McGlaun*, 352 S.E.2d at 560. Since both parties had moved for summary judgment, the court concluded that the intent of the parties was an issue of material fact to be

---

**5.** In October, 1995, Wachovia Bank extended a loan of $20,000.00 to Goldberg Brothers, Inc., which was secured by a 1995 Honda automobile.

determined by the trier of fact. *Id.* at 650–651, 352 S.E.2d 558.

In both *Fairview Terrace* and *Fulton Bldg. & Loan,* purchasers of mortgaged property asked for the amount required to clear the title, and relied on that figure in purchasing the property. *Fairview Terrace,* 215 Ga. 407, 110 S.E.2d 641, *Fulton Bldg. & Loan,* 103 Ga. 376, 29 S.E. 932. The lienholders in each case then claimed that additional amounts were needed to fully repay the secured debt. *Id.* Both cases relied on a finding of fact, that the lienholder understood the intent of the purchaser, in holding that the lienholders were estopped from claiming any larger amounts and were required to cancel the security deeds. *Id.*

1. Where one purchases property subject to an incumbrance, and desires to pay to his vendor the difference between the purchase price and the amount of the incumbrance, and applies to the holder of the incumbrance for information as to the amount then due him, and such holder, with a full knowledge of the purpose for which such information is asked, states an amount which he declares to be all that is then due him, and the purchaser, acting upon the faith of this statement, has a settlement with his vendor, and reserves the amount which the holder of the incumbrance declared to be due him, such holder is estopped from claiming, as against the property or the purchaser, any larger sum than that reserved by the purchaser at the time of the settlement with his vendor. *Fulton Bldg. & Loan,* 103 Ga. 376, 29 S.E. 932 (Syllabus by the Court).

■ These holdings require that I determine whether Wachovia Bank understood that Regions Bank sought to fully satisfy all secured debt of GBI and RRI and acquire a first priority lien on the Property, and whether Wachovia Bank stated or implied that $610,411.16 was the amount required to accomplish that goal. *McGlaun,* 256 Ga. 648, 352 S.E.2d 558, *Fairview Terrace,* 215 Ga. 407, 110 S.E.2d 641, *Fulton Bldg. & Loan,* 103 Ga. 376, 29 S.E. 932. By a preponderance, the evidence establishes that Wachovia Bank knew that Regions Bank proposed paying all debt owed by GBI and RRI in order to clear all Wachovia Bank's liens so it could attain a first lien position, and that in response Wachovia Bank declared that $610,411.16 was the total then due to satisfy its debts and liens.

Mr. Wilkins, the attorney for Regions Bank, testified that he requested a statement of all debts outstanding and that he told Mr. Rightout, of Wachovia Bank, that he intended to pay off all the debt and have Wachovia Bank's liens cancelled. It is obvious that a bank refinancing debt would require information of the total debt required to be paid, and in exchange for payment would require at least the same priority lien on the collateral as was held by the paid off lender. However, Mr. Rightout testified that Wachovia Bank was unaware of Regions Bank's intent to acquire a first priority lien on the Property as well as of the need for the list to be complete, and that the list of notes was not the total debt due. Wachovia Bank may be correct that the list was incomplete; however, what must be determined is whether the list was intended to be complete and provided in such a way that Regions Bank would have assumed it was complete. In this case Wachovia Bank's providing a listing of payoffs providing for seven loans could only have been in response to a request for all outstanding debt. In fact, at the time of the request there is no evidence of any other monies due Wachovia Bank. A list of seven loans and their total, provided by a bank in response to request for all debt, can be assumed to be complete.

The check tendered at the closing stated that it was a loan payoff; named the Debtor, GBI and RRI; and gave the address of the Property. Wachovia Bank accepted, endorsed and negotiated the check labeled "Loan Payoff" and "2501 Henry Street." Wachovia Bank understood from those no-

tations that Regions Bank intended to pay off the debt secured by the Property.

I find from the evidence that Wachovia Bank understood Region Bank's intent in requesting the total debt due, provided a dollar amount that could only be taken as the answer to that request, and then accepted a check in that dollar amount. Wachovia Bank should have canceled the security deed on the Property.

■■■ The second issue is whether the dragnet clause of the Guaranty Agreement, incorporated in the Security Deed, allowed Wachovia Bank to retain its lien on the Property despite the payment received from Regions Bank, and so collateralize subsequent negative balances in the deposit/checking accounts, any credit card balances and the Honda automobile loan. It did not. "A security deed containing an open-end or dragnet clause will continue to be effective so long as an indebtedness arising out of contract between the original parties to the deed continuously exists from the deed's date." *Brinson v. McMillan*, 263 Ga. 802, 440 S.E.2d 22, 23 (1994) (citing *McGlaun*, 352 S.E.2d at 560, and O.C.G.A. § 44–14–1). Because the debt was satisfied as of August 23, 1995, the indebtedness is not continuous and the dragnet clause is not effective.

> A deed to secure debt with an open end or dragnet clause will continue to be effective only so long as there exists indebtedness between the grantor and grantee. *C & S Dekalb Bank v. Hicks*, 232 Ga. 244, 246, 206 S.E.2d 22 (1974). Therefore a determination by the factfinder that the parties intended for the October 26, 1978 check to satisfy the indebtedness would mean that the deed to secure debt and the guaranty executed in 1978 were rendered ineffective at that time. *See Frank & Co. v. Nathan*, 159 Ga. 202, 125 S.E. 66 (1924).

*McGlaun*, 352 S.E.2d at 560–561. Thus, the determination that the $610,411.16 payment was intended to satisfy the total debt of GBI and RRI requires a determination that the Security Deed was satisfied upon the Regions Bank loan closing. *Id.* Although the Security Deed remained of record, the dragnet clause does not remain effective when the complete debt amount is satisfied.

■■ Regions Bank seeks liquidated damages of $500.00, additional losses and reasonable attorney's fees and costs.

> (c) Upon the failure of the grantee or holder to transmit properly a legally sufficient satisfaction or cancellation as provided in this Code section, the grantee or holder shall, upon written demand, be liable to the grantor for the sum of $500.00 as liquidated damages ·and, in addition thereto, for such additional sums for any loss caused to the grantor plus reasonable attorney's fees. [with exceptions not relevant here]

O.C.G.A. § 44–14–3(c).

In *Edenfield v. Trust Co. Mortgage*, the lienholder did not cancel the lien until almost four months after the loan payoff was received. 185 Ga.App. 678, 365 S.E.2d 520 (Ga.App.1988). There was a controversy over the precise amounts due and paid, because the payoff amount was calculated as of May 23, the plaintiff did not pay the debt until June 5, and meanwhile a monthly automatic payment was credited against plaintiff's debt. *Id.*, 365 S.E.2d at 521. The facts showed that the defendant had "honest doubt" concerning payment of the debt. *Id.* at 522. Because there was a bona fide controversy and the lienholder had a good faith belief that the debt had not been paid in full, the penalties of O.C.G.A. § 44–14–3(c) did not apply. *Id.* The Court of Appeals of Georgia quoted the Supreme Court of Georgia.

> "... the General Assembly did not intend to force a grantee to refuse to satisfy or cancel at his peril, if his refusal is not wanton or oppressive, but is the result of an honest doubt. In instances where there is a bona fide controversy, and the grantee has a good faith belief that the debt has not been paid in full, imposition of the statutory penalties

clearly would not serve the statutory purpose of punishing grantees who have unreasonably withheld ·cancellation, and in fact would hinder the object of deterrence by arbitrarily and capriciously imposing penalties where none are merited ... [Thus] where there are honest, disputed, or doubtful questions, a grantee is not liable for the refusal to satisfy an instrument if his refusal is made in good faith and under the honest belief that the debt has not been paid. The grantee of the instrument will not be excused, however, where his refusal to satisfy results from mere inadvertence, indifference, inattention, or wantonness. *Mitchell v. Oliver*, 254 Ga. 112, 116, 327 S.E.2d 216."

*Id.* at 522.

In this case, no bona fide controversy existed. Wachovia Bank acted in bad faith in refusing to cancel the Security Deed. Mr. Wilkins, closing attorney, on behalf of Regions Bank, requested loan payoff information sufficient to satisfy Wachovia Bank. Wachovia Bank provided that information. The clear purpose, known to all parties, was satisfaction of all indebtedness due Wachovia Bank, satisfaction of all security interests held by Wachovia Bank, and establishing a first in priority security interest in the prior Wachovia Bank collateral in Regions Bank, the lender providing the necessary funds to satisfy the debts due Wachovia Bank. Upon tender, acceptance and negotiation of the closing check by Wachovia Bank, no justification existed for Wachovia Bank's refusal to cancel the Security Deed on the Property.

Having established that Wachovia Bank acted in bad faith, the penalties provided pursuant to O.C.G.A. § 44–14–3(c) are appropriate. Beyond the statutory damages of $500.00 and reasonable attorneys fee Regions Bank failed to prove any other loss.

It is therefore ORDERED that the Security Deed recorded in the Office of the Clerk of Superior Court of Richmond County, Georgia at Realty Reel 407, page 2268 from Alberta Goldberg encumbering the property known as 2501 Henry Street, Augusta, Richmond·County, Georgia in favor of Wachovia Bank of Georgia, N.A. be canceled of record and that Regions Bank f/k/a Allied Bank of Georgia holds a first in priority security interest in the identified property and the proceeds thereof; and

further ORDERED that Regions Bank f/k/a Allied Bank of Georgia recover from the defendant Wachovia Bank, N.A. f/k/a Wachovia Bank of Georgia, N.A. the sum of $500.00 together with reasonable attorney's fees to be later determined by the court as provided pursuant to O.C.G.A. § 44–14–3(c). Regarding the award of reasonable attorney's fees, Regions Bank's counsel shall submit within 30 days of the date of this order counsel's application for an award of attorney's fees with copy served upon opposing counsel. Opposing counsel shall file any responses to the application for attorney's fees within 30 days following. service. A determination as to the amount of the fees will be made based upon the application, response and applicable precedent without further hearing.