41568, 41569. MITCHELL v. OLIVER; and vice versa.
(327 SE2d 216)

BELL, Justice.

In 1981 Mrs. Jamie V. Mitchell filed a four-count complaint against Warren H. Oliver, Jr. In her first count she sought cancellation of a promissory note and security deed on the ground of usury. In her second count she prayed for the court to award liquidated damages and attorney fees pursuant to Ga. L. 1975, p. 1134 (OCGA § 44-14-3).[1] Her third count was for attorney fees due to bad faith and stubborn litigiousness (apparently based on OCGA § 13-6-11), and in her fourth count she sought punitive damages. The court granted summary judgment for Mitchell as to her first count, declaring the note to be usurious and the debt to be paid in full, and directing the deed to be cancelled and marked satisfied of record. Oliver filed a direct appeal in the Court of Appeals. Ga. L. 1975, p. 757, Section 3 (now codified as OCGA § 9-11-56 (h)). The Court of Appeals dismissed the appeal for failure to file a notice of appeal within 30 days of entry of the order granting partial summary judgment.

On remand Mitchell elected not to proceed with the third and fourth counts of the complaint, and the court dismissed them with

---

[1] Mitchell did not seek the third type of award provided for by OCGA § 44-14-3 (c), "additional sums for any loss caused to the grantor."

prejudice. The court, sitting without a jury, tried the second count and entered judgment for Oliver. Mitchell appealed to the Court of Appeals. Oliver cross-appealed this judgment, insofar as it incorporated the earlier order of partial summary judgment. Mitchell moved to dismiss the cross-appeal of the partial summary judgment on the ground of res judicata. This motion was denied. After hearing oral arguments, the Court of Appeals transferred both appeals to this court, on the ground that their subject matter is within our exclusive equitable jurisdiction. For the following reasons, we affirm the judgment of the trial court.[2]

1. Relying on *Bozard v. J. A. Jones Constr. Co.*, 148 Ga. App. 425 (251 SE2d 362) (1978), Oliver contends that, notwithstanding his failure to properly pursue his first appeal, he is entitled to a second opportunity for appellate review of the partial summary judgment. We decline to accept his argument.

In *Bozard*, the losing parties filed an application for interlocutory review pursuant to Code Ann. § 6-701 (now OCGA § 5-6-34). Their application was granted. However, upon review, the Court of Appeals held that the partial summary judgment was a final judgment subject to direct appeal, which had been affirmed by operation of law when the losing parties did not file a notice of appeal within 30 days. The court concluded that, since it had no jurisdiction to review a final judgment, the interlocutory appeal had been improvidently granted. *Bozard v. J. A. Jones Constr. Co.*, 146 Ga. App. 877 (247 SE2d 605) (1978).

This court granted a writ of certiorari, and remanded for reconsideration in light of *Culwell v. Lomas & Nettleton Co.*, 242 Ga. 242, 243 (248 SE2d 641) (1978). In *Culwell*, we held that OCGA § 9-11-56 (h) is an exception to the finality rule which does not require the losing party to file an immediate direct appeal after a grant of partial summary judgment. Instead, the Code provision benefits the losing party by affording him the option of directly appealing either at that time or after the rendition of final judgment. *Culwell*, supra, 242 Ga. at 243. On remand in *Bozard*, the Court of Appeals conformed its decision to *Culwell*, holding that "even though this interlocutory appeal must still be dismissed for lack of jurisdiction, there has been no § 81A-154 (b) certification of finality and [the losing parties] may still appeal the grant of summary judgment . . . after the rendition of the final judgment in their case, which is still pending below." *Bozard v. J. A. Jones Constr. Co.*, 148 Ga. App., supra at 427.

There is a crucial distinction between the facts of *Bozard* and the

---

[2] This opinion is the second by this court in this case. The first was vacated upon motion for rehearing, and the instant opinion substituted therefor.

instant case. A defective attempt to seek interlocutory review pursuant to OCGA § 5-6-34 (b) does not have the effect of making the judgment appealed from res judicata of the issue. *Turner v. Harper*, 231 Ga. 175, 176 (200 SE2d 748) (1973). The holding in the second *Bozard* opinion — that the losing parties could still appeal the grant of partial summary judgment after the rendition of final judgment — is therefore quite correct. Here, in distinct contrast to the losing parties in *Bozard*, Oliver elected to invoke his right to an immediate *direct* appeal pursuant to OCGA § 9-11-56 (h), but committed a fatal procedural default.

Unlike an OCGA § 5-6-34 (b) interlocutory application, which is discretionary with both the trial and appellate courts, OCGA § 9-11-56 (h) allows the losing party to secure an interlocutory ruling as a matter of right. If the losing party suffers dismissal of his § 9-11-56 (h) appeal for failure to fulfill procedural requirements, the losing party should, in return for his privilege of direct appeal, suffer the same sanction of res judicata which attaches to a final judgment from which a procedurally defective appeal is taken. Therefore, we hold that a losing party on summary judgment who puts the machinery of immediate appellate review under OCGA § 9-11-56 (h) into motion, yet commits a procedural default fatal to his appeal, is foreclosed from thereafter resubmitting the matter for review on appeal of the final judgment.

Accordingly, the Court of Appeals should have granted Mitchell's motion to dismiss Oliver's cross-appeal of the summary judgment on the first count of Mitchell's complaint. We grant the motion, and thereby affirm the judgment of the trial court as to count one of the complaint.

2. The remaining issues for appellate consideration are matters within the jurisdiction of the Court of Appeals, but in the interest of judicial economy we will proceed to determine them. In 1964 Mitchell's husband signed a note in the principal amount of $9,900, and conveyed to the promisee, Oliver's mother, a deed to certain real property in order to secure the debt. Oliver's mother died in 1969; Mitchell's husband died in 1973. In 1979, after total payments of several thousand dollars in excess of the principal had been paid, Mrs. Mitchell ceased payments. On September 14, 1981 she filed the instant suit.

With respect to her claim under OCGA § 44-14-3, she alleged that, as required by OCGA § 44-14-3 (c), see *Green v. Cohutta Banking Co.*, 156 Ga. App. 292 (1) (274 SE2d 688) (1980), she had made a written demand[3] on Oliver for the transmittal of a legally sufficient

---

[3] This document is not part of the record on appeal. However, Oliver has stipulated the

satisfaction or cancellation, but he had failed to comply. Her complaint did not, however, specifically allege that the note was usurious, or that she had notified Oliver of this exact allegation in her OCGA § 44-14-3 (c) letter of demand. The earliest indication in the record that Mitchell was relying on the theory of usury is found in answers to interrogatories, filed by Mitchell on December 8, 1981. In response to an interrogatory requesting in what manner Mitchell contended all payments had been made, Mitchell responded that the note was usurious, all interest was therefore forfeited, and the note was thus satisfied by operation of law as of the date that the principal amount had been paid in full. On February 2, 1984, the court entered a judgment denying Mitchell's OCGA § 44-14-3 (c) claim, finding, in essence, that Oliver was not liable because there had been a bona fide controversy over the issue of usury. On appeal, Mitchell contends that the trial court erred by refusing to award liquidated damages and attorney fees as provided in § 44-14-3 (c). We disagree.

Subsection (b) of § 44-14-3 provides that, "[w]henever the indebtedness secured by any instrument is paid in full, the grantee of the instrument,[4] within 45 days of the date of the full payment, shall cause to be furnished to the grantor or to the clerk of the superior court of the county or counties in which the instrument is recorded a legally sufficient satisfaction or cancellation to authorize and direct the clerk or clerks to cancel the instrument of record." Subsection (c) penalizes the failure of the grantee to transmit properly a legally sufficient satisfaction or cancellation, by making him "liable to the grantor for the sum of $200.00 as liquidated damages and, in addition thereto, for such additional sums for any loss caused to the grantor plus reasonable attorney's fees."

To date, OCGA § 44-14-3 has received little construction by the appellate courts of this state. See, e.g., *Green v. Cohutta Banking Co.*, supra, 156 Ga. App. In particular, the existence *vel non* of a good faith defense to § 44-14-3 (c) is of first impression in this state. Although OCGA § 44-14-3 does not, on its face, create a good faith defense to its application, it is clear that the trial court interpreted such a defense to be implicit in the statute. We therefore must determine whether the court correctly construed the statute, and, if so, whether the good faith exception was correctly applied.

Other jurisdictions which have considered this issue have differed in the result they reach. See 59 CJS 745, Mortgages, § 474 d (1949); 55 AmJur2d 494, Mortgages, § 496 (1971). Our own determination is

---

fact that written demand was made.

[4] OCGA § 44-14-3 (a) (3) defines "instrument" as "a deed to secure debt, a security instrument, a purchase money mortgage, a financing statement, a personalty mortgage, a loan contract, or other instrument executed in connection with any loan."

guided by the well-established rule of statutory construction that, "[i]n arriving at the intention of the legislature, it is appropriate for the court to look to the old law and the evil which the legislature sought to correct in enacting the new law and the remedy provided therefor. It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature. The construction must square with common sense and sound reasoning." *State v. Mulkey*, 252 Ga. 201, 204 (2) (312 SE2d 601) (1984).[5]

The plain legislative purpose underlying OCGA § 44-14-3 (c) is to protect grantors from victimization by grantees who unreasonably withhold satisfaction or cancellation. To accomplish this purpose, the statute compensates the victimized grantor, punishes the grantee who has perpetrated the abuse, and attempts to deter future abuses. See Jones on Mortgages, Vol. 2, § 1269 (1928). It is just as clear, however, that the General Assembly did not intend to force a grantee to refuse to satisfy or cancel at his peril, if his refusal is not wanton or oppressive, but is the result of an honest doubt. In instances where there is a bona fide controversy, and the grantee has a good faith belief that the debt has not been paid in full, imposition of the statutory penalties clearly would not serve the statutory purpose of punishing grantees who have unreasonably withheld cancellation, and in fact would hinder the object of deterrence by arbitrarily and capriciously imposing penalties where none are merited.

We therefore find that the better rule, which we hereby adopt, is that where there are honest, disputed, or doubtful questions, a grantee is not liable for the refusal to satisfy an instrument if his refusal is made in good faith and under the honest belief that the debt has not been paid. The grantee of the instrument will not be excused, however, where his refusal to satisfy results from mere inadvertence, indifference, inattention, or wantonness. See Jones on Mortgages, supra, § 1270; 59 CJS 745, Mortgages, supra, § 474 d; 55 AmJur2d 494, Mortgages, supra, § 496. Accordingly, the trial court correctly interpreted the General Assembly's intent in enacting § 44-14-3. Moreover, it is clear that the court correctly applied the statute to the facts of this case.

There is a presumption that the judgment of a trial court, sitting as a trier of fact, is correct, and the appellant has the burden in asserting error to show it by the record. In this case, Mitchell argues that, although the interest called for by the terms of the usurious note held by Oliver was not fully paid, the full payment of the principal of

---

[5] Citations of authority and quotation marks have been omitted.

that note constituted "payment in full" within the meaning of OCGA § 44-14-3 (b). This contention, in and of itself, presents a distinct issue of statutory interpretation which we do not decide today.[6] However, even assuming Mitchell's contention to be true, the court did not err in finding for Oliver. There is nothing in this record to show that the note was so palpably usurious as to render Oliver's defense of the suit unreasonable as a matter of law. Moreover, the earliest indication in the record that Mitchell was alleging usury occurred nearly three months after she initiated suit. We do not think that, in general, any particular form of words is necessary when phrasing a § 44-14-3 (c) demand. Nevertheless, if a grantor relies upon "payment" of the debt in a manner other than that prescribed by the terms of the debt instrument, it is incumbent upon that grantor to inform the grantee of the exact manner by which the grantor claims the debt has been satisfied. If the grantor fails to do this, then the good faith of the grantee should be presumed, save in clear instances where from all the circumstances the nature of the grantor's claim should be obvious to the grantee. Inasmuch as the record does not reveal that Mitchell overcame this presumption, and, furthermore, since she has not shown that the court erred in ruling that Oliver's defense was not frivolous, we affirm the judgment of the trial court as to the second count of Mitchell's complaint.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 15, 1985.

*Adams, Hemingway & Hemingway, Tim D. Hemingway,* for appellant.

*John E. Simmons,* for appellee.

---

[6] Other jurisdictions have found that similar statutes must be strictly construed because they are in the nature of penal statutes, see Jones on Mortgages, Vol. 2, § 1271 (1928); 59 CJS 745, Mortgages § 474 a (1949); 55 AmJur2d 494, Mortgages, § 488 (1971), or because they are in derogation of common law, *Atlantic Nat. Bank of Fla. v. Tworoger,* 448 S2d 616 (Fla. App. 3rd Dist. 1984). We note, again without deciding the issue, that the rule of strict construction might arguably mandate a finding that, where there is payment in full of an usurious note's principal, but not the interest called for by the terms of the note, there is no "payment in full" within the meaning of § 44-14-3 (b). But see *Cornelison v. U. S. Building &c. Assn.,* 292 P 243 (11, 12) (Idaho 1930); *Scott v. Field,* 75 Ala. 419 (1883). See generally 56 ALR 335, Anno., "Validity and Construction of Statute Allowing Penalty and Damages Against Mortgagee Refusing to Discharge Mortgage on Real Property" (1928); 8 ALR 4th 853, Anno., "Damages Recoverable for Real-Estate Mortgagee's Refusal to Discharge Mortgage or Give Partial Release Therefrom" (1981).