A06A0986. HOWARD v. POPE.
(637 SE2d 854)

PHIPPS, Judge.

William H. Howard, a candidate for public office, brought a defamation action against Joseph E. Pope based on a political advertisement authored by Pope and published in a local newspaper in September 2004 and also based on comments made by Pope during a radio broadcast in October 2004. The trial court granted Pope summary judgment on all claims. Howard claims the trial court's ruling was erroneous. We agree and reverse.

---

[11] See *Glover*, supra.

At the time of the alleged defamation, Pope was seeking re-election as sheriff of Butts County and Howard was running against him. On August 23, 2004, Donald Mapp informed the Butts County sheriff's office that he had found pornography in his mailbox with "Vote Pope '04" written on it. He was told to write a statement about the incident. In the statement, Mapp wrote that when he came home from work at 9:00 a.m. that day, he saw a gold King Cab Mazda truck in the neighbor's driveway. The truck then moved in front of his house and he went inside. Mapp came back outside a few minutes later and saw the truck stop briefly near his driveway before continuing down the road. He checked the mail at approximately 9:30 that morning and found the pornography.

On November 18, 2004, Mapp executed an affidavit in which he stated that he saw Howard in the gold Mazda pickup truck and that he communicated this information to officers and employees of the sheriff's department, including Pope.

During his deposition taken on March 8, 2005, Mapp testified that he had not checked his mailbox for 18 hours before he discovered the pornography. He also testified at his deposition that he later went to the sheriff's office and spoke to one or more officers about what he had seen, but was not sure if Pope was present. He testified that he told the officers that he had seen Howard's profile. He admitted, however, that he could not see his mailbox from where he was standing and that he did not see Howard put anything in his mailbox.

On August 25, Howard learned that someone claimed to have seen his truck near their mailbox and that pornography with "Vote for Pope" written on it had been placed in that person's mailbox and other mailboxes in Butts County. He wanted Pope to know that he had not been involved in the incident and volunteered to take a polygraph examination. The polygrapher's report indicated that Howard had responded truthfully when he denied being involved in placing the pornography in mailboxes. Howard sent a copy of the polygrapher's report to Pope by facsimile and mail on August 28.

On September 1, Pope placed the following advertisement in the Jackson Progress-Argus newspaper, addressed to the citizens of Butts County:

> During the past week, many of you have received porno-graphic material with my name on it stuffed into your mailboxes. These pictures are being distributed by my op-ponent. He has been seen sneaking this material into mail-boxes just the way he has distributed much of his smear campaign garbage. In addition to being morally wrong, placing pornography in your mailbox is illegal under federal law. My opponent has been reminded of this repeatedly but

he chooses to ignore the law, instead making up his own rules as he goes along. It is his mission to tear me down personally because I fired him from my office nine years ago. This type of behavior is disgusting to me but it demonstrates perfectly the character and practices of my opponent. Character is important as Sheriff. If you elect him as Sheriff, this is the way he will operate our county law enforcement. You know the fair and honest job I have done as your Sheriff. I am not a coward. I will never sneak anything into your private mailbox or property. I am not afraid to speak up or sign my name to anything I put out. I have a long record of service to our community and you know I stand tall for what is right. Thank you for your tremendous support. When you receive your next smear installment put out by my opponent, call me and I'll come out and dispose of this trash.

The advertisement was signed "Gene Pope," and followed by "CHARACTER COUNTS RE-ELECT SHERIFF GENE POPE."

In his deposition, Pope admitted that he did not like Howard, that he had written the advertisement published in the newspaper and that the word "he" in the advertisement referred to Howard. He stated that he had relied solely on information received from Mapp to support his claim that Howard had put the pornography in mailboxes and that he believed that Mapp had always been trustworthy. Although Pope was not certain whether he had seen the results of Howard's polygraph test before or after September 1, he stated that he disagreed with the opinion of the polygrapher. However, Pope testified that he did not think that Mapp had seen Howard "sneaking" any material into mailboxes. Pope did not know who, or even whether anyone had reminded Howard repeatedly that placing pornography into a mailbox is illegal, but testified that someone should have reminded him.

In response to Pope's motion for summary judgment, Howard submitted affidavits in which he denied having placed pornography in anyone's mailbox and stated that Pope's statements to the contrary were false. He also stated that he had never owned a gold Mazda truck, but instead owned a silver Nissan truck. Howard also stated that he was working in a courtroom in Newnan at the time Mapp claimed to have seen him. Howard submitted affidavits from two people he worked with on August 23 who stated that he was in bankruptcy court in Newnan from approximately 8:30 a.m. until 4:00 p.m.

On October 21, 2004, Howard filed his defamation suit based on the publication. He later amended his complaint to add a claim for defamation based on a radio broadcast that occurred on October 26,

2004. Howard claimed that Pope had participated in the broadcast and falsely stated that Howard was the subject of an ongoing criminal investigation by the Butts County sheriff's office for the criminal offense of theft of services and that the matter had been turned over to another county agency to determine the extent of Howard's violations. Pope also allegedly stated that the matter had been referred to the Georgia Bureau of Investigation. Howard claimed that in the same broadcast, Pope made reference to a shooting that occurred when Howard was a police officer in 1976. While responding to a breaking and entering call, Howard had shot and killed a juvenile. According to Howard, Pope knew that the matter had been fully investigated and that Howard had been exonerated of any wrongdoing. Nonetheless, Pope referred to the incident in the radio broadcast and stated that there was no statute of limitation on "homicide."

Pope filed a motion for summary judgment on the newspaper publication claim before the complaint was amended, but never sought summary judgment on the radio broadcast claim. The trial court granted Pope's motion on the newspaper publication claim and, sua sponte, awarded Pope summary judgment on Howard's claim for defamation via radio broadcast.

> In reviewing grants of summary judgment, this court conducts a de novo review of the law and the evidence. To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

1. Howard claims that the trial court erred by granting summary judgment on his defamation claim based on Pope's newspaper advertisement. He argues that issues of fact remain regarding whether Pope acted with actual malice when he published the advertisement.

Georgia law defines libel as "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule."[2] Howard submitted ample evidence of the falsity of some of the statements in Pope's advertisement to survive

---

[1] *Jessup v. Rush*, 271 Ga. App. 243 (609 SE2d 178) (2005) (citation and punctuation omitted).

[2] OCGA § 51-5-1.

a motion for summary judgment. We must now consider whether he submitted sufficient evidence that the statements were made with malice.

As a candidate for public office, Howard was a public figure.[3] To recover on his libel claim, he therefore must prove that Pope published the advertisement with "actual malice."[4] The appropriate summary judgment question is "whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not."[5] A statement is made with actual malice when made with knowledge that it was false or with reckless disregard of whether it was false.[6]

> [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.[7]

A defendant's own denial of actual malice does not ensure him a favorable outcome in the presence of evidence to the contrary.[8]

Here, there is clear and convincing evidence that would refute Pope's denial of actual malice. Pope testified that he relied solely on Mapp to support his advertisement. In his initial written statement to the sheriff's office, Mapp did not mention that he had seen Howard near his neighbor's mailbox, but only that he had seen a truck (different in type and color from the truck owned by Howard) in his neighbor's driveway and near his own driveway. And Mapp later testified that he did not see Howard put anything in his mailbox. Pope himself admitted that he did not believe that Mapp had seen Howard putting material into mailboxes; yet his advertisement stated that his opponent "has been seen sneaking [pornographic] material into mailboxes." Pope also testified that he did not know whether anyone had ever told Howard that placing pornography in mailboxes is a federal crime, finally admitting that if they had not, "they should

---

[3] *Collins v. Cox Enterprises*, 215 Ga. App. 679 (452 SE2d 226) (1994).

[4] *New York Times Co. v. Sullivan*, 376 U. S. 254, 283 (84 SC 710, 11 LE2d 686) (1964); see id.

[5] *Anderson v. Liberty Lobby*, 477 U. S. 242, 255-256 (106 SC 2505, 91 LE2d 202) (1986).

[6] *New York Times Co.*, supra at 279-280.

[7] *St. Amant v. Thompson*, 390 U. S. 727, 731 (88 SC 1323, 20 LE2d 262) (1968).

[8] Id. at 732; *Barber v. Perdue*, 194 Ga. App. 287, 290 (390 SE2d 234) (1989).

have," but his advertisement specifically stated, "[m]y opponent has been reminded of this repeatedly but he chooses to ignore the law, instead making up his own rules as he goes along."

We find that the evidence, at the least, is sufficient to authorize a reasonable jury to conclude that Pope acted with reckless disregard of whether the statements he published were false.[9] These flagrant accusations of criminal conduct go beyond the criticism, hostility and unfairness a candidate may expect to encounter while running for political office.[10] The trial court therefore erred by granting Pope summary judgment on this claim.[11]

2. Howard claims that the trial court erred by granting summary judgment to Pope on his claim for defamation by radio broadcast. He argues that because Pope did not address this claim in his motion for summary judgment or present any evidence to refute the claim, he was not entitled to summary judgment. Alternatively, Howard argues that it was error to grant summary judgment because he was denied the procedural protection of notice and a hearing on this claim.

At the beginning of the hearing on Pope's motion for summary judgment, Pope's counsel stated that Pope was seeking partial summary judgment on the initial complaint. The parties did not argue the merits of the defamation by radio broadcast claim during the hearing or in the briefs they filed in the trial court. And at the end of the hearing, Pope's counsel informed the court that he would be filing a motion for summary judgment on that claim and requested additional time to conduct discovery before filing the motion. The court granted an additional 45 days of discovery. More than 45 days after the hearing, but before any additional motion for summary judgment was filed, the court granted Pope summary judgment on all claims.

> Although our law concerning motions for summary judgment allows a trial court to grant, sua sponte, a summary judgment, a trial court's authority to do so is not unlimited. The grant of summary judgment must be proper in all other respects. This means that in addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment. The crucial point is to ensure that the party against whom summary

---

[9] See *Eidson v. Berry*, 202 Ga. App. 587, 589 (415 SE2d 16) (1992).

[10] See *Thibadeau v. Crane*, 131 Ga. App. 591, 593-594 (3) (206 SE2d 609) (1974).

[11] See *Eidson*, supra.

judgment is sought has had a full and final opportunity to meet and attempt to controvert the assertions against him.[12]

Based on the record and hearing transcript, we cannot conclude that Howard had "a full and fair opportunity to meet and attempt to controvert the assertions against [him] with respect to [that] claim[ ]."[13] We therefore reverse the grant of summary judgment on the defamation by radio broadcast claim.[14]

*Judgment reversed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED OCTOBER 31, 2006.

William G. Quinn III, for appellant.

Fears, Lawrence & Turner, Kenneth G. Lawrence, Douglas R. Ballard, Jr., for appellee.

[12] *Dixon v. MARTA*, 242 Ga. App. 262, 266 (3) (529 SE2d 398) (2000) (citation and punctuation omitted).
[13] Id.; see also *Knight v. American Suzuki Motor Corp.*, 272 Ga. App. 319, 326 (2) (612 SE2d 546) (2005) (trial court erred in granting summary judgment on ground not raised in motion without giving nonmovant proper notice that issue would be considered).
[14] See *Knight*, supra.