A07A1165. FERDINAND v. CITY OF EAST POINT.
A07A1166. FULTON COUNTY v. CITY OF EAST POINT.
(653 SE2d 529)

MIKELL, Judge.

In an order entered on November 21, 2005 (the "2005 order"), the trial court below granted partial summary judgment in favor of the City of East Point ("East Point") on East Point's breach of contract claim against Fulton County (the "County") and Arthur Ferdinand as

---

Tax Commissioner of Fulton County (the "Commissioner").[1] The trial court ruled that the County and the Commissioner breached their contract to bill, collect, and remit ad valorem taxes on behalf of East Point by withholding $2,885,827.84 from East Point's 2004 tax proceeds. The court reserved all issues of damages for breach of contract for the trial of the case, and ordered the Commissioner to provide an accounting of all funds collected on behalf of East Point under the contract.

When the accounting ordered by the court was not forthcoming, East Point moved to hold the Commissioner in contempt and to compel an accounting in order "[t]o establish the total amount of damages arising out of the County's and Commissioner's breach" of the contract. At the hearing on the motion for contempt held on June 6, 2006, however, East Point waived its right to an accounting and to any possible additional damages for the County's breach of contract that an accounting might have uncovered. Subsequently, the court issued its order of June 20, 2006 (the "2006 order"), awarding damages to East Point for the County's breach of contract in the amount of $2,885,827.84, plus accrued interest. The court certified this order as a final judgment as to fewer than all claims pursuant to OCGA § 9-11-54 (b). The court reserved ruling on East Point's claim for costs and attorney fees under OCGA § 13-6-11, and this claim is still pending in the court below. Both the Commissioner and the County appealed the 2006 order.

### Case No. A07A1165

Although the Commissioner filed a notice of appeal in Case No. A07A1165, he chose not to submit a brief as appellant. Therefore, the Commissioner's appeal is deemed abandoned and is dismissed pursuant to Court of Appeals Rule 23 (a).

### Case No. A07A1166

The County appeals the 2006 order in Case No. A07A1166, asserting that the trial court erred when it granted summary judgment as to the County's liability for breach of contract and as to damages. For the reasons set forth below, we affirm the trial court's 2005 order granting partial summary judgment as to the County's

---

[1] Although the Fulton County Board of Tax Assessors and its members (the "Tax Board") had also been named as parties defendant in the original petition filed by East Point, the 2005 order as to liability for breach of contract ran only against the County and the Commissioner. The Tax Board is not a party to this appeal.

liability for breach of its contract with East Point, and we reverse the 2006 order awarding damages for that breach.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[2]

Viewed in the light most favorable to the County as the nonmoving party, the record shows the following undisputed facts. Starting in the year 1999, the County, the Commissioner, and East Point, a municipality located wholly within the County, entered into an agreement (the "Collection Agreement"), pursuant to which the County and the Commissioner agreed to bill, collect, and then remit to East Point all ad valorem taxes due East Point. The taxes which the County thus collected on behalf of East Point were to be remitted "promptly" to East Point, less one percent of the taxes collected as the County's compensation (the "Collection Fee"). Although the Collection Agreement did not authorize the County or the Commissioner to retain or divert any amount other than the Collection Fee from the East Point tax proceeds, it is undisputed that in October 2004 the County deducted an amount totaling $2,885,827.84 from its remittance of the 2004 tax proceeds it had collected on behalf of East Point, designating the amounts deducted as "1999 AT&T PU Refund" and "1999 AT&T PU Refund Int." This diversion of its 2004 tax proceeds triggered East Point's breach of contract claim against the County, the Tax Board, and the Commissioner.

The County withheld these East Point tax funds in order to fund in part its settlement of a refund claim by AT&T Communications of the Southern States, LLC ("AT&T"). In 1999, AT&T filed an ad valorem tax return with the Georgia State Revenue Commissioner (the "State Commissioner"), as required for a public utility.[3] The State

---

[2] (Citation omitted.) *Intl. Auto Processing v. Glynn County*, 287 Ga. App. 431 (1), n. 1 (651 SE2d 535) (2007). Accord *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

[3] As a "public utility," AT&T was subject to the centralized assessment procedures concerning ad valorem taxes provided in OCGA § 48-5-510 et seq., pursuant to which public utilities make an annual tax return of all property located in Georgia to the State Commissioner

Commissioner then issued a Proposed Notice of Assessment to AT&T and to the Tax Board on September 9, 1999, showing an increased valuation of AT&T's property in the County from the returned value of $314,762,806 to the proposed value of $500,928,447 (the "Initial Valuation"). The Tax Board accepted the Initial Valuation without change and issued a Change of Assessment Notice to AT&T on October 15, 1999, as required by OCGA § 48-5-306 (a),[4] showing the increase in valuation from the returned value to the Initial Valuation. On October 28, 1999, AT&T filed a notice of appeal with the Tax Board pursuant to OCGA §§ 48-2-18 (d) and 48-5-311 (e), on the ground that "the assessment of AT&T's property has not been properly equalized with the assessments of other property in this county." AT&T did not file an appeal with the State Commissioner, however, as it was required to do given that the Tax Board adopted the State Commissioner's proposed valuation without change.[5]

The Commissioner never issued a tax bill to AT&T based on the Initial Valuation, however. Instead, on October 21, 1999, after AT&T filed a corrected tax return with the State Commissioner, the State Commissioner issued a revised Proposed Notice of Assessment. The Tax Board accordingly issued a revised Change of Assessment Notice to AT&T on October 22, 1999, showing $1,005,715,131 as the value returned by AT&T, and $1,600,547,495 as the value proposed by the State Commissioner and accepted without change by the Tax Board (the "Corrected Valuation"). On October 25, 1999, the Commissioner issued temporary tax bills to AT&T based on the Corrected Valuation, and AT&T paid the 1999 taxes in full on or about December 8, 1999.

AT&T did not appeal the Corrected Valuation to the Tax Board, and the time for such an appeal expired by statute 45 days after October 22, 1999, the date the Tax Board issued its revised Change of Assessment Notice.[6] AT&T also did not appeal the Corrected Valuation to the State Commissioner by filing an appeal in the Superior

(OCGA § 48-5-511 (a)), rather than to the various county tax commissioners (OCGA § 48-5-16 (c)). The State Commissioner then reports to the taxpayer and to each county board of tax assessors both the fair market value of the utility's property in that county as returned by the utility, and any change to that value made by the State Commissioner (OCGA §§ 48-5-524 (a), 48-2-18 (c)). This statutory scheme allows utility properties to be valued for ad valorem tax purposes as a whole at the state-wide level. See *Ga. Power Co. v. Monroe County*, 284 Ga. App. 707, 708 (644 SE2d 882) (2007).

[4] OCGA § 48-5-306 ("When any such corrections, changes, or equalizations have been made by the board [of tax assessors], the board shall, within five days, give written notice to the taxpayer of any changes made in such taxpayer's returns").

[5] See *Telecom*USA v. Collins*, 260 Ga. 362, 363 (1), 366 (1) (393 SE2d 235) (1990) (where county adopted State Commissioner's proposed assessment without change, utility's appeal would proceed in Superior Court of Fulton County under OCGA § 48-2-18 (c), rather than under administrative appeal provisions of OCGA §§ 48-5-311 (e) and 48-2-18 (d)).

[6] See OCGA §§ 48-2-18 (d); 48-5-311 (e) (2) (A).

Court of Fulton County, and such an appeal must be filed within 30 days of receipt of the Commissioner's Notice of Proposed Assessment.[7] After the time for appeal expired, no further means of administrative and judicial review of the Corrected Valuation were available to AT&T.[8] Under OCGA § 48-5-352 (a), "[f]air market value shall be finally determined for county ad valorem property taxation purposes when all means for administrative and judicial review of the fair market value have been exhausted or are no longer available." That same statute provides that, "in determining the fair market value of property within their respective tax jurisdictions for purposes of ad valorem property taxation, municipalities shall use the fair market value finally determined for the property for county ad valorem property taxation purposes."[9] Thus, East Point was required to use, and was entitled to rely upon, the Tax Board's finally-determined fair market values for AT&T property for 1999.

On October 11, 2002, however, AT&T filed a claim for refund of its 1999 taxes in the amount of $18,000,000 with the County and with East Point. When no action on the refund claim was taken, AT&T sued the County and East Point on January 23, 2004, for a tax refund as to its 1999 taxes under OCGA § 48-5-380. In its refund lawsuit, AT&T challenges the 1999 taxes as "erroneous and illegal" but does not challenge the 1999 fair market value as it was ultimately determined in the Corrected Valuation. Indeed, it is settled law that such a refund action may not address challenges to determinations of fair market value.[10]

Eventually, the County, the Tax Board, and the Commissioner agreed to settle with AT&T on its refund claim, and the Settlement Agreement was executed on May 18, 2004. Although East Point was named as a defendant in the refund lawsuit, East Point was not a party to the Settlement Agreement and did not agree to it. Pursuant to the Settlement Agreement, AT&T agreed to dismiss its refund action and its administrative appeal of the 1999 Initial Valuation,

---

[7] OCGA § 48-2-18 (c) ("the taxpayer may challenge the [State] commissioner's proposed assessment in an appeal filed in the Superior Court of Fulton County within 30 days of receipt of the notice" of the proposed assessment). See *Telecom*USA*, supra.

[8] See *Gwinnett County Bd. of Tax Assessors v. Gwinnett I Ltd. Partnership*, 265 Ga. 645, 646-647 (458 SE2d 632) (1995) (administrative appeal under OCGA § 48-5-311 available to challenge valuation; refund procedure under OCGA § 48-5-380 "intended only to correct errors of fact or law which have resulted in erroneous or illegal taxation").

[9] OCGA § 48-5-352 (a).

[10] See *Gwinnett I Ltd. Partnership*, supra; accord *Nat. Health Network v. Fulton County*, 270 Ga. 724, 728-729 (3) (514 SE2d 422) (1999) (summary judgment to county proper in a taxpayer refund action under OCGA § 48-5-380, where taxpayer's claim is based on disagreement with the amount of the assessed value and should have been asserted in an appeal proceeding under OCGA § 48-5-311). Also, presumably OCGA § 48-2-18 (c) applies. See *Telecom*USA*, supra.

and the Tax Board agreed to dismiss its appeal of the grant of the writ of mandamus which had been obtained by AT&T in connection with its administrative appeal.[11] The County and Tax Board also agreed to refund $11,650,000 to AT&T, and the parties agreed that this money "shall be derived from the following political subdivisions located within Fulton County: . . . City of East Point: $2,667,771.00." Accordingly, on October 20, 2004, and again on December 1, 2004, the County and the Commissioner deducted a total of $2,885,827.84 from its checks to East Point for 2004 taxes collected by the County on behalf of East Point.

In response to the County's withholding of a substantial portion of East Point's anticipated 2004 tax receipts, East Point filed a petition on November 12, 2004, for emergency injunctive relief, declaratory judgment and damages against the County, the Commissioner, and the Tax Board. On November 17, 2004, a temporary restraining order was issued, enjoining the County and the Commissioner from using East Point tax funds to fulfill the County's obligations under the Settlement Agreement. That same day, however, the County, the Commissioner, and the Tax Board filed an interpleader action against East Point and AT&T and deposited $2,875,751.01 with the court, asserting that East Point and AT&T both claimed the interpleaded funds. East Point responded, asserting counterclaims against the County arising from the County's alleged breach of its Collection Agreement with East Point. In order to avoid insolvency, East Point entered into a consent order on December 17, 2004 (the "Consent Order"), with the County and AT&T.

Under the Consent Order, the interpleaded fund was distributed immediately. While AT&T received $1,400,000 outright, East Point received the remaining $1,475,751 subject to its agreement to repay that amount to AT&T with interest over the next two years. The Consent Order acknowledged that East Point's counterclaims against the County "are separate, independent and distinct from the claims East Point and AT&T may have to the Interpleaded Fund," and further expressly provided that "East Point remains free to pursue its Counterclaims and any other claims asserted in this action against Fulton County."

Following a hearing held on November 1, 2005, on the County's and East Point's cross-motions for summary judgment, the trial court

---

[11] AT&T filed its administrative appeal of the Initial Valuation on October 28, 1999. More than three years later, and after filing its refund claim with the County, AT&T petitioned for a writ of mandamus on January 31, 2003, seeking an order compelling the Tax Board to forward its administrative appeal to the Fulton County Board of Equalization (the "Board of Equalization"). The court granted the petition on February 19, 2003. The record does not reflect what action, if any, was taken by the Board of Equalization on this appeal.

issued the 2005 order, denying the County's motion for summary judgment and granting partial summary judgment to East Point as to the County's liability for breach of contract. Subsequently, the trial court issued the 2006 order determining damages for the County's breach of contract, and the County has brought this appeal.

1. The County argues that it did not breach the Collection Agreement by withholding East Point 2004 tax receipts. The County contends that it was without authority to issue a refund to AT&T; that the funds withheld were actually in settlement of AT&T's tax appeal; that this settlement had the effect of lowering the 1999 property tax valuations for AT&T in East Point; that due to such lower 1999 valuations, East Point was entitled to reduced ad valorem tax proceeds for 1999; and that the County was thus entitled to offset this overpayment to East Point for 1999 against the County's current obligation to remit East Point taxes collected for 2004. This argument is without merit.

The County contends that it "did not possess the authority to calculate and resolve the OCGA § 48-5-380 refund claim as part of the Settlement Agreement." The cases cited by the County in support of this proposition, however, do not involve the County's power to grant refunds of taxes, and are thus distinguishable on their facts from the case at hand.[12] Moreover, the County ignores the fact that OCGA § 48-5-380 specifically permits each county to make tax refunds in proper cases.[13]

Further, the County's argument is not supported by any evidence in the record. The administrative appeal filed by AT&T with the Tax Board in 1999 pertained to the Initial Valuation, which was superseded by the Corrected Valuation. The Corrected Valuation was not appealed, and AT&T lost the opportunity to challenge the 1999 assessments of its property. In fact, the refund lawsuit brought by AT&T did not challenge the State Commissioner's 1999 increased assessment of AT&T's property. The Settlement Agreement itself, while referring to AT&T's petition for mandamus, does not revalue any AT&T property for 1999. Further, East Point was not a party to the Settlement Agreement.

---

[12] See, e.g., *Beazley v. DeKalb County*, 210 Ga. 41, 42, 46, 49 (77 SE2d 740) (1953) (no authority to issue revenue bonds in order to construct and maintain general storage warehouses); *Bryan County v. Yates Paving &c. Co.*, 251 Ga. App. 441, 442 (554 SE2d 584) (2001) (authority to agree to arbitration of construction contract dispute).

[13] OCGA § 48-5-380 (a) ("Each county . . . may refund to taxpayers any and all taxes . . . which are determined to have been erroneously or illegally assessed and collected from the taxpayers under the laws of this state . . . or which are determined to have been voluntarily or involuntarily overpaid by the taxpayers").

> Under OCGA § 9-11-56, once a movant supports his motion for summary judgment, the opponent cannot rest upon the mere allegations of his complaint, but must come forth with affidavits or other evidence setting forth specific facts showing that a genuine issue exists for trial.[14]

The County has failed to meet this burden. We therefore affirm the trial court's grant of summary judgment as to the County's liability for breach of the Collection Agreement with East Point.

2. In three other enumerations of error, the County challenges the trial court's summary determination that the amount of damages incurred by East Point as the result of the County's breach was $2,885,827.84, plus accrued interest. Because we find that the County was not given adequate notice that the trial court would address this issue, we reverse the grant of summary judgment as to damages.

East Point's motion for partial summary judgment, filed August 12, 2005, asked the court to grant summary judgment as to the County's breach of the Collection Agreement. East Point did not request any summary determination of damages from the breach; in fact, in its motion East Point specifically stated that "East Point reserves for trial resolution of whether and to what extent it can recover damages . . . arising out of Fulton County's and the Tax Commissioner's breaches of their contractual and fiduciary duties." The briefs submitted by the parties on this motion also do not address the determination of damages. At the hearing on the motion, counsel for East Point explained that an accounting would be necessary to determine the amount of damages, because the evidence suggested that the $2.8 million withheld by the County in late 2004 was not the only amount improperly withheld. Thus, the County was without notice that the issue of damages would be addressed at the 2005 hearing on East Point's motion for partial summary judgment.

Further, the court's 2005 order provided that "[a]ll issues of damages for breach of contract are reserved to the trial of the case." This language does not "promise" the County a jury trial on this issue, as the County contends, but it does indicate that the trial court did not rule on the issue of damages in its 2005 order.

Similarly, the County had no notice that this issue would be addressed at the hearing on East Point's motion for contempt in 2006. East Point did not seek a summary ruling as to damages in its 2006 motion for contempt or in its brief, although East Point did argue that

---

[14] *Parker v. Silviano*, 284 Ga. App. 278, 281 (2) (643 SE2d 819) (2007), citing *Bozeman v. CACV of Colorado*, 282 Ga. App. 256, 257 (638 SE2d 387) (2006).

the damages would be in an amount no less than the $2.8 million withheld by the County.

Although the trial court may grant summary judgment sua sponte, the court's power in this regard is limited, as our Supreme Court noted in *Porter Coatings v. Stein Steel & Supply Co.*:[15]

> A motion for summary judgment is a vehicle for disposing of a controversy without the necessity of a trial. It is, as the description shows, a summary disposition of the issues in order to efficiently resolve litigation. Nevertheless, due process requires that the respondent not be surprised; rather, that he be given reasonable opportunity to refute the movant's showing that there are no genuine issues of material fact.[16]

Based on the record and hearing transcript before us, we cannot conclude that the County had "a full and fair opportunity to meet and attempt to controvert the assertions against them"[17] with respect to the damages incurred by East Point resulting from the County's breach of the Collection Agreement. Consequently, we must reverse this portion of the trial court's order, and we remand the case to the trial court for further proceedings consistent with this opinion.

*Appeal dismissed in Case No. A07A1165. Judgment affirmed in part and reversed in part in Case No. A07A1166. Johnson, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 31, 2007 —

*Bauer & Deitch, Henry R. Bauer, Jr.*, for appellant (case no. A07A1165).

*Overtis H. Brantley, Willie J. Lovett, Jr., Robert D. Ware*, for appellant (case no. A07A1166).

*Jones Day, Edward K. Smith*, for appellee.

---

[15] 247 Ga. 631 (278 SE2d 377) (1981).

[16] Id. (in ruling on motion for summary judgment, trial court may consider supporting material on behalf of movant which was filed at least 30 days before the hearing, in order to allow the nonmovant "fair opportunity to contradict the supporting material relied upon by the movant"). Accord *Howard v. Pope*, 282 Ga. App. 137, 142-143 (2) (637 SE2d 854) (2006).

[17] *Dixon v. MARTA*, 242 Ga. App. 262, 266 (3) (529 SE2d 398) (2000). Accord *Parker*, supra at 282 (2).