A09A1187. FERDINAND v. CITY OF EAST POINT.
A09A1188. FULTON COUNTY v. CITY OF EAST POINT.
(687 SE2d 617)

PHIPPS, Judge.

Arthur Ferdinand, Tax Commissioner of Fulton County, and Fulton County appeal from the trial court's order awarding the City of East Point damages of $2,885,827.84, and accrued interest of $824,467.89, for breach of contract. The Commissioner contends that he is not liable to East Point in any amount, and the County challenges the amount of the award on various grounds. For reasons that follow, we affirm.

This is the second appearance of this case in our court. In the prior appeal,[1] we affirmed the trial court's June 2006 grant of summary judgment to East Point on the issue of the County's liability for breach of contract, but determined that the County was not given adequate notice that the damages issue would be addressed and therefore remanded the case to the trial court to allow the

---

[1] *Ferdinand v. City of East Point*, 288 Ga. App. 152 (653 SE2d 529) (2007).

parties a full and fair opportunity to address that issue.[2] The Commissioner also filed a notice of appeal, but never filed an appellate brief. As a result, his appeal was dismissed.[3]

The facts relevant to this appeal, as set forth in our prior opinion, are as follows:

> Starting in the year 1999, the County, the Commissioner, and East Point, a municipality located wholly within the County, entered into an agreement (the "Collection Agreement"), pursuant to which the County and the Commissioner agreed to bill, collect, and then remit to East Point all ad valorem taxes due East Point. The taxes which the County thus collected on behalf of East Point were to be remitted "promptly" to East Point, less one percent of the taxes collected as the County's compensation (the "Collection Fee"). Although the Collection Agreement did not authorize the County or the Commissioner to retain or divert any amount other than the Collection Fee from the East Point tax proceeds, it is undisputed that in October 2004 the County deducted an amount totaling $2,885,827.84 from its remittance of the 2004 tax proceeds it had collected on behalf of East Point, designating the amounts deducted as "1999 AT&T PU Refund" and "1999 AT&T PU Refund Int." . . . The County withheld these East Point tax funds in order to fund in part its settlement of a refund claim by AT&T Communications of the Southern States, LLC ("AT&T").[4]

> The related Settlement Agreement provided that the settlement funds paid to AT&T would be obtained from various political subdivisions within the County, including East Point. The parties to the agreement were AT&T, the County and the Fulton County Board of Tax Assessors (the "Tax Board").

> In response to the County's withholding of a substantial portion of East Point's anticipated 2004 tax receipts, East Point filed a petition on November 12, 2004, for emergency injunctive relief, declaratory judgment and damages against the County, the Commissioner, and the Tax Board. On November 17, 2004, a temporary restraining order was issued, enjoining the County and the Commissioner from

---

[2] Id.

[3] Id. at 153.

[4] Id. at 154.

using East Point tax funds to fulfill the County's obligations under the Settlement Agreement. That same day, however, the County, the Commissioner, and the Tax Board filed an interpleader action against East Point and AT&T and deposited $2,875,751.01 with the court, asserting that East Point and AT&T both claimed the interpleaded funds. East Point responded, asserting counterclaims against the County arising from the County's alleged breach of its Collection Agreement with East Point. In order to avoid insolvency, East Point entered into a consent order on December 17, 2004 (the "Consent Order"), with the County and AT&T. Under the Consent Order, the interpleaded fund was distributed immediately. While AT&T received $1,400,000 outright, East Point received the remaining $1,475,751 subject to its agreement to repay that amount to AT&T with interest over the next two years. The Consent Order acknowledged that East Point's counterclaims against the County "are separate, independent and distinct from the claims East Point and AT&T may have to the Interpleaded Fund," and further expressly provided that "East Point remains free to pursue its Counterclaims and any other claims asserted in this action against Fulton County."[5]

In November 2005, the trial court granted partial summary judgment to East Point, concluding that the County and the Commissioner, in his official capacity, had breached the Collection Agreement by deducting $2,885,827.84 from East Point's 2004 tax proceeds, and reserving the issue of damages. The trial court further ordered the Commissioner to provide a full, detailed written accounting of all proceeds billed, collected, handled and remitted on behalf of East Point for the duration of the Collection Agreement. That November 2005 order was not appealed.

When the Commissioner failed to provide the required accounting, East Point moved to hold him in contempt. At the hearing on that motion, East Point offered to waive its claim to the accounting and withdraw the motion for contempt if the court entered a final judgment in its favor for the amount withheld from its 2004 tax proceeds, plus interest. The Commissioner agreed to that outcome. The court subsequently issued a "Final Order and Judgment" in June 2006. In that order, the court relieved the Commissioner of the obligation to provide East Point an accounting. The June 2006 order

YALE LAW LIBRARY

---

[5] Id. at 157.

also awarded final judgment to East Point and against the County and the Commissioner, in his official capacity, in the principal sum of $2,885,827.84, plus interest. Pursuant to OCGA § 9-11-54 (b), the court expressly determined that there was no just reason for delaying entry of final judgment as to that claim. The court reserved ruling on East Point's claim for attorney fees. The County and the Commissioner appealed that order, which was addressed in our prior opinion.

On remand, East Point filed a motion for summary judgment on the damages issue. The trial court conducted a damages hearing at which East Point relied upon deposition testimony from the Commissioner about the amounts withheld from East Point in 2004. In his deposition, the Commissioner testified that the County's obligation to pay AT&T a refund pursuant to the settlement agreement was separate from the obligations of the County and the Commissioner under the Collection Agreement to remit taxes to East Point. He also testified that tax revenues of $2,885,827.84 were withheld from East Point to pay AT&T. The County did not refute that evidence. Accordingly, the trial court granted summary judgment in favor of East Point for the withheld tax revenue, plus accrued interest. The trial court denied East Point's claim for attorney fees. The Commissioner and the County appeal this judgment entered on remand.

> On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[6]

## Case No. A09A1187

1. The Commissioner argues that he cannot be held to have breached his obligations under the Collection Agreement because his statutory duty to pay AT&T's refund claim prevailed over his contractual duty to pay East Point, and because the Consent Order required him to pay the interpleaded funds to AT&T. We conclude that the Commissioner is foreclosed from seeking review of this issue.

The trial court certified its June 2006 order as subject to

---

[6] *Merlino v. City of Atlanta*, 283 Ga. 186 (657 SE2d 859) (2008) (citations omitted).

immediate appellate review under OCGA § 9-11-54 (b),[7] and both the County and the Commissioner filed notices of appeal. The Commissioner, however, failed to file a brief or a motion to withdraw the appeal, and his appeal was dismissed. In these circumstances, the Commissioner is foreclosed from seeking another appeal on the issue of his liability for breach of contract.[8]

> [A] losing party on summary judgment who puts the machinery of immediate appellate review under OCGA § 9-11-56 (h)[9] into motion, yet commits a procedural default fatal to his appeal, is foreclosed from thereafter resubmitting the matter for review on appeal of the final judgment.[10]

We also note that the Commissioner did not raise either of these arguments in the trial court in response to East Point's motion for summary judgment on damages. "[A]bsent special circumstances,[11] an appellate court need not consider arguments raised for the first time on appeal."[12]

2. The Commissioner argues that East Point, by entering the Consent Order, waived its contractual right to require the Commissioner to perform his obligations under the Collection Agreement and breached its implied duty of good faith. Again, the Commissioner is foreclosed from submitting this matter for review by his procedural default in the prior appeal, and these arguments were not raised on remand in the trial court.[13]

---

[7] That subsection pertinently provides:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

[8] *Mitchell v. Oliver*, 254 Ga. 112, 114 (1) (327 SE2d 216) (1985); see also *Canoeside Properties v. Livsey*, 277 Ga. 425, 427 (1) (589 SE2d 116) (2003) (clarifying that *Mitchell*, supra, applies to direct appeals of summary judgment orders under OCGA § 9-11-56 (h), not interlocutory appeals).

[9] That subsection pertinently provides: "An order granting summary judgment on any issue or as to any party shall be subject to review by appeal."

[10] *Mitchell*, supra.

[11] "Special circumstances could include a jurisdictional challenge, a claim of sovereign immunity, a serious issue of public policy, a change in the law, or an error that works manifest injustice." *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2), n. 10 (573 SE2d 389) (2002) (citation and punctuation omitted).

[12] Id.

[13] See Division 1, supra.

YALE LAW LIBRARY

*Case No. A09A1188*

3. The County contends that the award to East Point was erroneous because the Collection Agreement did not provide for liquidated damages, and East Point did not prove damages.

"When a party breaches a material term of a contract, . . . and the other party is damaged thereby, compensation for actual damages is a right and remedy available to the damaged party by law unless the contract provides otherwise."[14] As we previously held, the County breached the Collection Agreement by withholding 2004 tax revenues.[15] Although the Collection Agreement does not contain a liquidated damages provision or otherwise limit damages, East Point adequately proved that tax revenues in the principal amount of $2,885,827.84 were withheld in violation of the Collection Agreement, and the trial court was authorized to award pre-judgment interest on that amount.[16]

Although on motion for summary judgment the burden of establishing the nonexistence of any genuine issue of fact is upon the moving party,[17] when the moving party makes a prima facie showing that it is entitled to judgment as a matter of law, "the opposing party must come forward with rebuttal evidence or suffer judgment against him."[18] The County claims that a genuine issue of fact remains regarding whether East Point is entitled to the amounts awarded, but has pointed to no evidence that supports its claim. "[A] mere assertion that there is an issue of material fact, without more, is [an] insufficient basis upon which to oppose an otherwise appropriate motion for summary judgment."[19]

4. The County contends that the trial court erred by finding no merit in its claim that East Point could have mitigated its damages by refusing to allow AT&T to recover funds from the interpleader action.

As the Commissioner acknowledged, the County's and the Commissioner's obligations under the Collection Agreement to remit taxes to East Point were separate from any obligation to pay AT&T

---

[14] *Centex-Rodgers Constr. Co. v. McCann Steel Co.*, 206 Ga. App. 827, 829 (1) (426 SE2d 596) (1992) (citations omitted).

[15] *Ferdinand*, supra at 158-159.

[16] OCGA § 13-6-13; *Colonial Bank v. Boulder Bankcard Processing*, 254 Ga. App. 686, 692-693 (7) (563 SE2d 492) (2002) ("In actions for unliquidated damages arising out of breach of contract, it is within the discretion of the factfinder to increase the amount of damages by an allowance of interest") (citation omitted).

[17] *Leonaitis v. State Farm &c. Ins. Co.*, 186 Ga. App. 854, 855-856 (2) (368 SE2d 775) (1988).

[18] Id. at 856 (citation omitted).

[19] Id. (citation and punctuation omitted).

its tax refund, which obligation was memorialized in the Settlement Agreement to which East Point was not a party. The County attempted to conflate those contractual obligations when it filed the interpleader action against East Point and AT&T. That same day, East Point had filed a petition for emergency injunctive relief to stop the County and the Commissioner from using East Point tax funds to fulfill the County's obligations under the Settlement Agreement. The withholding of those funds brought East Point close to insolvency and necessitated some agreement with the County and AT&T regarding the interpleaded funds. The Consent Order allowed East Point temporary use of a portion of those funds, but did not require it to relinquish its separate claim against the County for the withheld tax revenues.

The rule of mitigation in contract cases provides: "Where by a breach of contract a party is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence."[20] That rule did not require East Point to challenge AT&T's entitlement to a tax refund from the County under an agreement to which East Point was not a party. If the Settlement Agreement was ill-advised, it was the County's obligation to address that problem, not East Point's. Thus, this claim lacks merit.

5. The County contends that the trial court erred by finding its waiver argument without merit. The County argues that East Point waived its right to recover amounts greater than the amounts awarded by the trial court by agreeing to waive its right to an accounting at the hearing on East Point's motion to hold the Commissioner in contempt. But East Point's entitlement to additional damages is not at issue in this appeal. Thus, the County's argument is irrelevant.

6. Finally, we address East Point's motion for frivolous appeal damages and penalties against the County. Pursuant to OCGA § 5-6-6, "[w]hen in the opinion of the court the case was taken up for delay only, 10 percent damages may be awarded by the appellate court upon any judgment for a sum certain which has been affirmed." It does not appear that there was any valid reason for the County to anticipate that it could obtain a reversal of the trial court's judgment. This court previously confirmed the County's liability under the Collection Agreement, and it is undisputed that tax revenues of $2,885,827.84 were withheld from East Point. The County had several opportunities to challenge that amount, but made no genuine effort to do so. The arguments raised on appeal are clearly without merit. Under these circumstances, we conclude that

YALE LAW LIBRARY

---

[20] OCGA § 13-6-5.

the appeal was brought only for purposes of delay and grant East Point's motion for ten percent damages.[21] The trial court is directed to enter judgment in favor of East Point for frivolous appeal damages in the amount of ten percent of the judgment awarded.[22]

We further assess a $2,500 penalty against the County and another $2,500 penalty against its counsel under Court of Appeals Rule 15 (b)[23] for bringing this frivolous appeal.[24] Upon return of the remittitur, the trial court is directed to enter a $5,000 judgment in favor of East Point in the form of a $2,500 penalty against the County and a $2,500 penalty against its appellate counsel.[25]

*Judgment affirmed in Case No. A09A1187. Judgment affirmed with direction in Case No. A09A1188. Smith, P. J., and Bernes, J., concur.*

DECIDED NOVEMBER 30, 2009.

*Henry R. Bauer, Jr.*, for appellant (case no. A09A1187).
*Robert D. Ware, Willie J. Lovett, Jr., Vincent D. Hyman, William S. Sams, Robert L. Martin*, for appellant (case no. A09A1188).
*Jones Day, Edward K. Smith, Jason T. Burnette*, for appellee.

---

[21] *Cunningham v. Tara State Bank*, 212 Ga. App. 470, 471 (442 SE2d 18) (1994); see also *Stringer v. Harkleroad & Hermance*, 218 Ga. App. 701, 704-705 (2) (463 SE2d 152) (1995) ("If an appellant knew or should have known that an appeal was ill-founded, sanctions should issue.") (citation omitted).

[22] See *Shamsai v. Coordinated Properties*, 259 Ga. App. 438, 440 (2) (576 SE2d 901) (2003).

[23] That rule allows the court to impose a penalty not to exceed $2,500 against any party and/or party's counsel in any civil case in which there is a direct appeal that is determined to be frivolous.

[24] See *Fulton County Bd. of Tax Assessors v. Harmon Brothers Charter Svc.*, 261 Ga. App. 534, 538 (583 SE2d 179) (2003) ("It is incumbent upon those who appeal a trial court's ruling to insure that they have a reasonable basis on which to proceed. This is especially true of a government agency spending the taxpayers' money in pursuing an appeal.").

[25] *Austin v. Austin*, 292 Ga. App. 335, 336 (664 SE2d 780) (2008).